IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

    Plaintiff,

v.                                                                      CIV 13-0397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS I-X,
inclusive; and JOHN DOES I-X, inclusive,

    Defendants.

# ORDER ON DEFENDANT VCNA, LLC'S
# MOTION FOR PROTECTIVE ORDER

**THIS MATTER** comes before the Court on Defendant Volvo Cars of North America, LLC's ("VCNA's") Motion for Protective Order Regarding Certain of Plaintiff's Topics for Corporate Representative Deposition (*Doc. 76*), filed May 14, 2014. Having reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that the motion is well-taken in part and will be granted in part.

VCNA seeks a protective order under Federal Rule of Civil Procedure 26(c) from certain areas of inquiry contained in Plaintiff's Second Amended Notice of Oral/Videotaped Deposition of a Volvo Company Representative, which was served on April 24, 2014. VCNA also filed a Notice of Partial Nonappearance with respect to certain topics in Plaintiff's deposition notice.

Although Volvo Car Company ("VCC") is not a party to the present litigation, the parties have reached an agreement whereby VCC will provide a corporate representative for a Rule 30(b)(6) deposition to take place in New Jersey.  *Doc. 76* at 1 n.1.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 30(b)(6) provides a mechanism for a party to obtain testimony from a corporation or other organization on matters described "with reasonable particularity."  *See* Fed. R. Civ. P. 30(b)(6).  Upon being served with a notice of deposition under this rule, the corporation must "designate one or more . . . persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."  *Id.*  The designated 30(b)(6) representative(s) "must testify about information known or reasonably available to the organization."  *Id.*

Discovery under Rule 30(b)(6) must also comport with general discovery principles outlined in Federal Rule of Civil Procedure 26(b).  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

## II. ANALYSIS

VCNA objects to seventeen of Plaintiff's eighteen identified areas of inquiry under Rule 30(b)(6). VCNA's objections are largely based upon relevance and over-breath of the identified topics. With respect to the breadth of the topics, Plaintiff maintains that the topics are "highly particularize [sic] and limited." *Doc. 81* at 3. Although the Court cannot agree that all of Plaintiff's topics rise to the level of *highly* particular, the Court concludes that, with limited exceptions discussed herein, the topics are *reasonably* particular and therefore satisfy the mandates of Rule 30(b)(6).

1. **FMVSS ["Federal Motor Vehicle Safety Standard"] 118, both as it existed in 2001, and as amended after 2001 and whether or not the subject window system would pass either version of the standard.**

First, insofar as this topic addresses the version of FMVSS 118 that was in effect in 2001 when the subject vehicle was manufactured, VCNA argues that it lacks reasonable particularity. The Court, however, finds the relevant portions of 2001 standard and the subject vehicle's satisfaction of the standard relevant and discoverable and the topic reasonably, though not "highly," particular.

Second, VCNA submits that the 2008 version of the FMVSS 118 standard, which was not yet in effect at the time the subject vehicle was manufactured, is outside the scope of New Mexico Uniform Jury Instruction Civ. 13-1421 and irrelevant to the claims and defenses in this case, as it has no tendency to make Plaintiff's design defect claims more or less probable. The Court disagrees. Uniform Jury Instruction 13-1421, which is the New Mexico jury instruction given when there is a claim that a product was made or supplied in violation of a

3

statute or ordinance, does not define the scope of discovery here.  Additionally, information surrounding the 2008 FMVSS 118 standard is relevant to Plaintiff's particular claims.  Plaintiff's counsel represents, and VCNA does not dispute, that "a modification of the 2001 standard created a test replicating an inadvertent actuation by a toddler and required that window switches not be subject to inadvertent actuation by pushing down on the window switch." *Doc. 81* at 3.  Plaintiff's counsel goes on to explain that the test, which he contends was established with input from Volvo and other car manufacturers, uses a 40mm ball to replicate the kneecap of a toddler.  *Id.*  Given that the 40mm ball test was designed to prevent inadvertent actuation of a power window by a toddler's limbs, which is precisely what Plaintiff alleges occurred in this case, facts surrounding the implementation of that test in 2008 are relevant to VCNA's notice and/or knowledge of the defect.  Although the *admissibility* of any version of FMVSS 118 is a matter left to the discretion of the presiding judge, this Court concludes that inquiry into VCNA or VCC's understanding of the 2008 standard and the process and reason for its implementation is reasonably calculated to lead to the discovery of admissible evidence.  VCNA's motion is denied with respect to Topic One.

**2. The reasons for changing the design of the power window switch in the 2011 Volvo S60.**

VCNA maintains that the power window switch found in the 2011 Volvo S60, a vehicle manufactured ten years after the subject vehicle, is irrelevant and not substantially similar to the subject vehicle, the 2001 Volvo S60.  Plaintiff, on the other hand, maintains that the 2011 Volvo S60 power window switch, which

4

was designed prior to the subject accident, is relevant to the feasibility of alternative designs as well as notice of the necessity for making design changes. Plaintiff advises that his expert will opine that the 2011 Volvo S60 power window switch was a feasible alternative design that was available at the time the subject vehicle was manufactured.

Typically, courts in the Tenth Circuit use the *Cooper Tire* similarity test when a plaintiff in a product liability case seeks to discover information about products other than the particular product at issue in the litigation. *See, e.g., In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009); *Gonzales v. Goodyear Tire & Rubber Co.*, 2006 WL 7290047 BB/LFG, at *7 (D.N.M. Aug. 10, 2006). Under *Cooper Tire*, the burden of demonstrating adequate similarity of other products and components falls on the proponent of discovery. *See generally In re Cooper Tire,* 568 F.3d 1180. One judge in this district has even required a proponent to demonstrate similarity through expert testimony when the issue would not be obvious to a layperson. *Gonzales*, 2006 WL 7290047, at *7-9. The Tenth Circuit has held that the similarly requirement is relaxed, however, when evidence is used to show notice of a potential defect. *Cooper Tire*, 568 F.3d at 1191. Here, Plaintiff seeks to question the corporate representative on this topic in part to demonstrate VCNA's notice of a design defect. Therefore, the *Cooper Tire* similarly requirement should be, at minimum, relaxed.

Notably, the utility of the *Cooper Tire* similarly test is further limited because Plaintiff seeks discovery as to other Volvo power window switches not

because they are similar but because they are different in significant respects. For instance, it is Plaintiff's position that Volvo changed the design of its 2011 Volvo S60 power window switch to a design that would have been feasible in 2001 when it manufactured the subject vehicle.  Given Plaintiff's theory of the case, the Court is more appropriately guided by general discovery principals – that is, whether the design of the 2011 Volvo S60 power window switch is relevant to the claims and defenses in this case and whether the discovery request is reasonably calculated to lead to the discovery of admissible evidence – rather than restricted to the *Cooper Tire* similarity test.  Ultimately, the design of the 2011 Volvo S60 power window switch is relevant to Plaintiff's claims because it relates to feasibility of an alternative design.

VCNA insists that future design changes do not prove defective design. Indeed, Federal Rule of Evidence 407, upon which VCNA relies, provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction." Fed. R. Evid. 407.  Rule 407 goes on to provide, however, that subsequent remedial measures *are* admissible for other purposes, such as to show feasibility of design.  *Id*.  As a result, the design changes to the 2011 Volvo S60, even if they are found to constitute subsequent remedial measures, are nevertheless relevant, and may even ultimately be admissible, to show feasibility of an alternative design.  Accordingly, the Court finds this topic

6

reasonably calculated to lead to the discovery of admissible evidence. VCNA's motion is denied with respect to Topic Two.

3. **Whether or not the 2011 Volvo S60 power window switch would pass the current version of FMVSS 118.**

Here, VCNA contends that the irrelevancy is "compounded," as this topic seeks inquiry into whether a vehicle other than the subject vehicle (i.e. the 2011 Volvo S60) would pass a standard other than the one in place at the time of the subject accident (i.e. the current FMVSS 118). Plaintiff responds, arguing that the 2011 Volvo S60's power window switch is one of his expert's identified alternative designs and that testimony that it would pass the current version of the FMVSS 118 would support his expert's opinion that the design change would have prevented the accident.

Although a close call, the Court, bearing in mind the broad interpretation of relevancy at the discovery stage, finds this topic reasonably calculated to the lead to the discovery of admissible evidence. Because, as Plaintiff explains, the 2011 switch's satisfaction of the current version of FMVSS 118 bears on its susceptibility to inadvertent activation by a toddler, the topic is relevant to Plaintiff's claims and discoverable. The Court will deny VCNA's motion with respect to Topic Three.

4. **How the power window system in the subject vehicle functions, including but not limited to the closing force, circumstances in which the auto reverse functions, force necessary to trigger auto reverse and similar characteristics.**

VCNA argues that this topic, as written, does not comply with Rule 30(b)(6)'s "reasonable particularity" standard. Plaintiff, in his response brief,

7

voluntarily limits the scope of the topic to "physical characteristics of the operation of the window," and excludes software or other matters unrelated to inadvertent actuations. Given these limitations, the Court is satisfied that the topic is reasonably particular and reasonably calculated to lead to the discovery of admissible evidence. The Court will deny VCNA's motion with respect to Topic Four, but will limit Plaintiff's inquiry as described.

5. **How the power window system in the 2011 Volvo S60 functions, including but not limited to the closing force of the window, the circumstances in which the auto reverse functions, the force necessary to trigger the auto reverse feature and similar characteristics.**

Defendant, once again, objects to this topic concerning the 2011 Volvo S60 power window system as irrelevant, lacking substantial similarity, and not reasonably particular. As the Court has already discussed, the 2011 Volvo S60 power window system is relevant to the issue of feasibility of alternative designs and, as such, is within the scope of discovery. As with the functioning of the subject vehicle's power window system, the Court will limit Plaintiff's inquiry under this topic to the physical characteristics of the operation window system, excluding software or other matters unrelated to inadvertent actuations. The Court will deny VCNA's motion with respect to Topic Four, but will limit Plaintiff's inquiry as described.

6. **The reasons for warnings provided to customers regarding injuries from power windows.**

VCNA contends that this topic is irrelevant to the claims at issue here, as Plaintiff has not asserted a failure to warn claim or even alleged that Plaintiff saw any relevant warnings prior to the subject accident. Plaintiff attaches to his

response brief "the warning from the 2001 Volvo S60," presumably from the owners' manual of the subject vehicle.  The warning, which relates particularly to "Electrically operated windows," advises vehicle owners as follows:  "Always remove the ignition key when the vehicle is unattended.  Make sure that childrens' [sic] hands are clear before raising the windows.  Never leave children unattended in the car."  *Doc. 81*, Ex. A.  Plaintiff asserts that this topic has various purposes, including "rais[ing] the question of why didn't they provide a different warning in a more obvious place."  *Doc. 81* at 7.  The Court agrees with VCNA that when used for this purpose in the absence of a failure to warn claim, this inquiry exceeds the scope of discovery.

However, Plaintiff offers an alternative purpose for this topic, explaining that if VCC or VCNA actually intended the warnings to prevent inadvertent actuation of windows by children, it would be relevant to VCNA's notice of a dangerous design.  The Court agrees that the dangers of which VCNA or VCC were aware, which may be determined by addressing the reason for issuing particular warnings about electrically-operated windows, are relevant to Plaintiff's negligence claims.  Accordingly, when used for this purpose, the information sought in this topic is relevant and discoverable.  The Court will deny VCNA's motion with respect to Topic Six.

7. **The decision process on wording the warnings regarding injuries from power windows.**

This topic is similar to the previous topic but focuses on "the decision process" for the same warnings.  The Court concludes that the decision process for issuing warnings about electrically-operated windows in the 2001 Volvo S60

9

is relevant to the dangers of which VCNA or VCC were aware at the time the subject vehicle was manufactured. As such, this topic is relevant to Plaintiff's negligence claims. The Court will deny VCNA's motion with respect to Topic Seven.

8. **Volvo's comments to NHTSA ["National Highway Traffic Safety Administration"] with regard to FMVSS 118.**

Defendant submits that this topic, as presently phrased, is overbroad and ambiguous. However, Plaintiff has apparently provided more specificity to VCNA regarding the scope of this topic, as Defendant explains that Plaintiff is referring to the 2008 version of FMVSS 118. The Court has already determined that information surrounding the 2008 version of the FMVSS 118 standard is relevant to Plaintiff's claims in this case. VCC has apparently produced, or at least agreed to produce, the comments to NHTSA about which Plaintiff now seeks to inquire at the Rule 30(b)(6) deposition. According to Plaintiff, detailed discussions were had between governments and automakers, including Volvo, several years before the subject accident regarding needed changes in the FMVSS 118 standard to protect children from inadvertent actuation. As the content of these comments to NHTSA may demonstrate notice of a design defect by VCC or VCNA prior to the subject accident, the Court concludes that they are relevant and discoverable. The Court cautions Plaintiff, however, not to stray too far afield, but to strictly limit his questions to Volvo's comments to NHTSA regarding the 2008 FMVSS 118 standard and the inadvertent actuation of power windows. The Court will deny VCNA's motion with respect to Topic Eight.

9. **Any testing done to the subject window switch or the switch used in the 2011 Volvo S60 to determine its susceptibility [to] inadvertent activation to raise the window.**

VCNA again asserts that the 2011 Volvo S60 window switch is irrelevant to Plaintiff's claims, but the Court disagrees as discussed herein. The Court further concludes that VCNA or VCC's testing of this switch to determine susceptibility to inadvertent activation is relevant to the feasibility of an alternative design that would effectively eliminate inadvertent actuation. Although VCNA insists that more detail is required for the topic to be reasonably particular, the Court finds the topic as written to be sufficiently particular.

10. **The design of the 2009 passenger window switch/switch covering depicted in the attached Exhibit "A."**

VCNA notes that the 2009 Volvo window switch and switch covering were used in Volvos manufactured eight years after the subject vehicle, at a time when Volvo was required to comply with a different (i.e. 2008) FMVSS 118 standard. Plaintiff explains that, in 2009, VCNA changed the plastic housing around the power window switch that was used in the Volvo S60, so that it had a "raised lip around the switch such that the switch could not be depressed by a child's knee." *Doc. 81* at 8-9. Plaintiff contends that information about the design of the 2009 Volvo window switch and covering, like that of the 2011 window switch, bears on VCNA's knowledge of a dangerous defect in the subject vehicle's switch design. Furthermore, Plaintiff suggests that the 2009 switch and covering demonstrates a reasonable alternative design. As with the 2011 Volvo S60 power window switch, the Court finds that the 2009 Volvo window switch and switch covering

11

are within the scope of discovery in this case. The Court will deny VCNA's motion with respect to Topic Ten.

11. **The cost per piece to Volvo of the plastic insert cover for the window switch used in 2009. (This is referring to the little plastic piece that goes around the switch. It will pop in and out and probably costs a few cents).**

Plaintiff asserts that the 2001 Volvo S60's window switch can be retrofitted "simply by popping out the little plastic piece from 2001 and popping in the little plastic piece from 2009." *Doc. 81* at 9. Plaintiff further submits that the cost of the design change is relevant to the reasonableness of the design. Defendant, in contrast, insists that there "is no issue at present where cost of the component is even arguably a factor in any design or decision process." *Doc. 76* at 18. While it is true that Plaintiff does not allege in his Complaint that cost was the impetus for Volvo's power window design or decision process, this does not necessarily preclude discovery on the issue of cost. After all, the cost of an alternative design factors into whether it was feasible. Indeed, a relevant factor under New Mexico strict products liability law is a company's "ability to eliminate the danger without seriously impairing the usefulness of the product or making it *unduly expensive*." *Brooks v. Beech Aircraft Corp.*, 902 P.2d 54, 62 (N.M. 1995) (emphasis added); UJI 13-1407. Additionally, although VCNA insists that "Plaintiff's inquiry into cost is simply an attempt at getting evidence to use at trial in an attempt to mislead and confuse the issues before the jury," the potential for jury confusion is a consideration reserved for the trial judge and does not, in itself, place the issue outside the scope of discovery.

12

VCNA also objects that determining the "cost per piece" is unduly burdensome, because "'cost' is not a simple piece of information that can be analyzed into a single, simple number or calculation that is repeatable and applicable to every single actual vehicle produced within a given model and model year." *Doc. 76* at 18. It goes on to suggest that the "'cost' of a component depends on many variables, including the number of units purchased in each order, fluctuating shipping costs, fluctuating market prices for the raw materials at the time of production of each batch of units, demand timeline for delivery of the units to the manufacturer, and other market factors." *Id.* at 18-19.

The Court is sensitive to the burden that this proposed inquiry could impose and will not require VCC to embark upon an "in-depth and time-consuming analysis" to determine a precise "cost per piece" of the subject component if that information is not already known or reasonably available to the organization. A retained expert may be better suited to offer such an analysis. Nevertheless, if a less precise estimate of the cost of the relevant component, perhaps in the form of a range, is reasonably available to VCC, the Rule 30(b)(6) representative should be prepared to answer Plaintiff's questions in this regard. The Court will grant in part and deny in part VCNA's motion as to Topic Eleven, limiting Plaintiff's inquiry to the information already known or reasonably available to VCNA or VCC in this regard.

12. **Any discussion or decision making process regarding whether or not to undertake a consumer campaign to replace the old plastic housing inserts with the new ones discussed in topics 10 and 11. (That is, the little plastic part just pops out and in over/around the switch. We want to discuss if they knew to make the change in the 09 model, why didn't they do something to alert the people that**

13

**owned the older model vehicles that had the switch without the protective covering).**

Beyond its general objection to the discoverability of the 2009 power window switch and switch cover, VCNA argues the topic lacks reasonable particularity. *Doc. 76* at 19. VCNA indicates in its motion that it "presumes that 'old plastic switch housing inserts' refer to the one in the subject 2001MY S60," (*id.* at 19), and Plaintiff does not indicate otherwise (*Doc. 81* at 9). The Court agrees that the topic, as written, is somewhat vague. However, with slight modifications the topic becomes reasonably particular. Plaintiff may question the Rule 30(b)(6) representative on the following topic: Discussions or decisions by VCC not to undertake a consumer campaign to replace the plastic housing inserts similar to the one in the subject vehicle with the type of insert covers used in the 2009 window switch or to alert owners of older model vehicles about the need for a retrofit.

The Court will grant in part and deny in part VCNA's motion with respect to Topic Twelve, allowing Plaintiff to question the Rule 30(b)(6) representative as outlined herein.

13. **The design of the switch used in the 1998 S70 and other Volvos attached as Exhibit "B."**

VCNA argues that this topic is irrelevant to the claims in this case, as it involves both a different vehicle model and different year. Indeed, the topic concerns a switch from a different model of Volvo vehicle, which was used three years before the subject vehicle was manufactured. Plaintiff notes that the Volvo switch depicted in Exhibit B has the fulcrum at the end of the switch, which he

14

suggests makes it not subject to inadvertent actuation. Plaintiff argues that it is significant that VCNA or VCC abandoned a switch not subject to inadvertent actuation in favor of one that was subject to inadvertent actuation. The Court concludes that the design of this earlier Volvo switch, depicted in Exhibit B, and whether it was subject to inadvertent actuation, is relevant and discoverable. As before, the Court will limit the scope of this topic to "physical characteristics" of the operation of the window and window switch, excluding software or other matters unrelated to inadvertent actuations.

VCNA contends that the phrase "and other Volvos" is not reasonably particular. The Court agrees that this particular phrase lacks specificity, and for purposes of this topic it will limit Plaintiff's inquiry to the design of the particular switch depicted in Exhibit B and will not permit inquiry as to different switches in "other Volvos."

The Court will grant in part and deny in part VCNA's motion with respect to Topic Thirteen, allowing Plaintiff to question the Rule 30(b)(6) representative as outlined herein.

14. **The per piece cost of the switch used in the subject vehicle as compared to the switch referenced in item 13 and Exhibit "B."**

Consistent with its ruling as to Topic Eleven, the Court will not require VCC to embark upon an "in-depth and time-consuming analysis" to determine a precise "cost per piece" of the switch depicted in Exhibit B if that information is not already known or reasonably available to the organization. Nevertheless, if a less precise estimate of the cost of the switch, or a determination of whether the switch depicted in Exhibit B was more or less expensive than the switch used in

15

the subject vehicle, is reasonably available to VCC, the Rule 30(b)(6) representative should be prepared to answer Plaintiff's questions in this regard.

The Court will grant in part and deny in part VCNA's motion as to Topic Fourteen, limiting Plaintiff's inquiry to the information already known or reasonably available to VCNA or VCC.

15. **The reasons for using the switch used in the subject vehicle instead of the design depicted in Exhibit "B" and used in other Volvo model passenger cars.**

Here, the Court concludes that the information sought is relevant and discoverable. Yet, as with Topic Thirteen, the Court will limit Plaintiff's inquiry into VCC's reasons for electing the particular switch design in the subject vehicle over the design depicted in Exhibit B and will not permit inquiry into different switches in "other Volvos."

The Court will grant in part and deny in part VCNA's motion with respect to Topic Fifteen, allowing Plaintiff to question the Rule 30(b)(6) representative as outlined herein.

17. **The documents produced responsive to parts 3-6 of the agreed discovery order.**

This topic relates to paragraphs 3 through 6 of an agreed discovery order entered by this Court on April 22, 2014. *See Doc. 75.* As reflected in that order, VCNA agreed, for the sake of resolving the parties' discovery dispute, to produce certain documents to Plaintiff. VCNA represents that the produced documents span a period of 16 years and cover a range of different topics, from marketing to communications with foreign governments to testing documents. *Doc. 76* at 22.

According to VCNA, this topic, as stated by Plaintiff, lacks reasonable particularity and is unjustifiably and unduly burdensome to VCNA and VCC.

Beyond identifying the general subject matter of some of the documents produced pursuant to paragraphs 3 through 6 of the agreed order, Plaintiff does not provide any additional particularity or indicate whether he seeks testimony about the source of the documents, the substance of the documents, or the authenticity of the documents. As such, the Court concludes that this topic, as written, is not reasonably particular and would be unduly burdensome to VCNA and VCC. The Court will, therefore, grant VCNA's motion as to Topic Seventeen. Notwithstanding this ruling, to the extent that the documents produced by VCNA and/or VCC directly relate to other topics allowed herein, Plaintiff may refer to the documents during its questioning of the Rule 30(b)(6) representative. For instance, the Court will permit Plaintiff to question the Rule 30(b)(6) representative as to the 2008 version of the FMVSS 118 standard. In doing so, Plaintiff may refer the deponent to and ask questions about documents produced by VCC and/or VCNA that directly relate the 2008 version of FMVSS 118.

18. **When and why Volvo converted the S60 auto reverse window mechanism to function in both the auto rise mode and the manual raise mode.**

VCNA objects to this topic on the basis of relevance, noting that the VCNA or VCC did not convert the window system's auto-reverse system as described in Topic Eighteen until ten years after the subject vehicle was manufactured. *Doc. 76* at 23. VCNA insists that the auto-reverse system used in the 2011 model year S60 "has no bearing on the reasonableness of the design of the window

17

system in the subject vehicle."  *Id*.  Additionally, it suggests that the 2011 Volvo S60's window system lacks substantial similarity.  *Id*.

The Court's rationale in the context of Topic Two applies with equal force to this topic.  The 2011 Volvo S60's auto-reverse system, like the 2011 Volvo S60's power window switch, is relevant to feasibility of alternative designs and notice of the necessity for making design changes and, therefore, falls within the scope of discovery in this case.  The Court will deny VCNA's motion with respect to Topic Eighteen.

**IT IS HEREBY ORDERED** that VCNA's Motion for Protective Order Regarding Certain of Plaintiff's Topics for Corporate Representative Deposition (*Doc. 76*) is granted in part and denied in part as described herein.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE