IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

      Plaintiff,

vs.                                                                    Civ. No. 13-397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS
I-X, inclusive; and JOHN DOES, I-X, inclusive,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendant Volvo Cars of North America LLC's

*Daubert* Motion to Exclude Plaintiff's Expert Witness Robert Johnson's Testimony on Hedonic

Damages and Wage Loss Scenarios (Motion to Exclude), filed on April 1, 2015.  (Doc. 245).

Plaintiff filed a response on April 20, 2015, and Defendant Volvo Cars of North America, LLC

(Volvo) filed a reply on May 7, 2015.  (Docs. 264 and 286).  Having reviewed the Motion to

Exclude, the accompanying briefs, and exhibits, the Court grants the Motion to Exclude.

Volvo moves to exclude certain opinion evidence in the May 15, 2014, expert report

prepared by Plaintiff's economic losses expert Robert Johnson.  First, Volvo asks that the Court

exclude any evidence from Johnson that quantifies the value of enjoyment of life, i.e., hedonic

damages.  Second, Volvo asks that the Court exclude any evidence Johnson may present on

wage loss scenarios.

As a gatekeeper under Fed. R. Evid. 702, the Court must ensure the reliability and

relevance of all proffered expert testimony.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137,

147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).

Generally, to be considered reliable, an expert's proposed testimony must be based on more than

a subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. The proponent of

expert testimony has the burden of demonstrating that its expert fulfills the Rule 702

requirements of reliability and relevance. *Heer v. Costco Wholesale Corp*., 589 Fed. Appx. 854,

861 (10th Cir. 2014).

     *A.  Johnson's Opinion on Hedonic Damages*

     Johnson sets forth a five-step method for calculating hedonic damages. (Doc. 245-4) at

4-5. Johnson takes into account the value of an average life ($8,900,000 in 1997 dollars) and

"the Human Capital component" to calculate that the value of a human life ranges from

$3,5000,000 to $12,900,00 in 2013 dollars. *Id.* at 4. Johnson's computation method then

requires a trier of fact to "determine the percentage (how much in percent) of the loss of the

enjoyment of life that the plaintiff has suffered due to their [sic] injuries" and to pick a number

between $3,5000,000 and $12,900,00, which "represents the 100% loss of the enjoyment of life."

*Id.* at 5. Finally, to determine the amount of hedonic damages, the trier of fact multiplies the

percentage of the loss of enjoyment of life by the chosen number representing the 100% loss of

enjoyment of life. *Id.*

     Although an economics expert can give "generalized testimony about the *concept* of

hedonic damages," the majority rule in federal court is that placing a dollar amount on hedonic

damages, including the use of benchmarks and range of values, does not meet the reliability and

relevance factors required to admit expert testimony. *See e.g., BNSF Railway Co. v. La Farge

SW., Inc.*, 2009 WL 4279849 *1-2 (D.N.M.). This district court has, likewise, has rejected

expert testimony on the value of a statistical life as not reliable or relevant. *See Chavez v.*

*Marten Transport., Ltd.*, 2012 WL 988008 *2 (D.N.M.) (citing *Cruz v. Bridgestone/Firestone North Am. Tire, LLC*, 2008 WL 5598439 *4 (D.N.M. 2008)).  Because Johnson's five-step method incorporates a monetary range for the value of a human life based, in part, on the value of an average or statistical life, the Court will exclude Johnson's five-step method for calculating hedonic damages as unreliable.

   B. *Johnson's Wage Loss Scenarios*

   Johnson, at Plaintiff's attorney's request,[1] calculated expected income for A.R. under three scenarios:  (1) as a high school graduate, (2) as having completed 1-3 years of college, and (3) as a college graduate.  (Doc. 245-2) at 2-3.  Johnson acknowledges in his report that he made his wage loss calculations for the three scenarios based on a nurse's life care plan, various statistical reports, the First Amended Complaint, and Plaintiff's deposition testimony.  (Doc. 245-1) at 1-2.  Johnson, however, admitted at his deposition that all he knew of A.R.'s injuries came from the life care plan; Johnson did not review any medical records.  (Doc. 245-3) at 4; depo. at 30.

   Volvo cites to *Virginian Ry. Co. v. Armentrout* to support its position that the speculative nature of determining loss of earning capacity for a child makes expert testimony on that subject inadmissible under Rule 702.  166 F.2d 400, 407 (4th Cir. 1948).  The Fourth Circuit in *Virginian Ry. Co.* stated:

   > The problem of assessing damages in a case of this sort is one which must be approached with common sense.  The little child has been terribly injured; but there is nothing from which loss of earning capacity can be estimated with any degree of accuracy.  The jury

---

[1] Volvo is concerned that the wage loss scenarios somehow represent the opinion of Plaintiff's counsel.  *See In re Tri State Outdoor Media Group, Inc.*, 283 B.R. 358, 365 (Bankr. M.D. Ga. 2002) ("Courts must be careful to not allow the testifying expert's opinion to be a conduit for the attorney's opinion or allow the testifying expert to be influenced by the attorney….").  Simply requesting three different wage loss scenarios, however, does not constitute improper influence by Plaintiff's counsel.

> must do the best it can to estimate this, taking into account, of course, such matters as average earnings.  They can consider, also, that the child is bright and intelligent and with proper education may be able to develop high earning capacity in intellectual pursuits.

*Virginian Ry. Co.,* 166 F.2d at 407.  The Fourth Circuit in that case, however, did not address the issue of admissibility of expert testimony on a child's loss of earning capacity.  Rather the issue before the Fourth Circuit was whether the district court erred in not setting aside the verdict as excessive and in not granting a new trial.  *Id.* Moreover, the Fourth Circuit actually stated that a jury should consider average earnings, information which an expert would provide.  *Id.*

Plaintiff cites to *Hull by Hull v. United States* to support its position that the Court should allow Johnson to present the three wage loss scenarios to establish loss of A.R.'s earning capacity.  971 F.2d 1499 (10th Cir. 1992).  In *Hull by Hull*, the Tenth Circuit affirmed the district court's acceptance of an expert's "present value calculation" of a child's lost future earnings.  *Id.* at 1511.  The issue in *Hull by Hull* was limited, however, to whether the district court properly adjusted the award for lost future earnings to reflect present value.  *Id.* at 1510-11.  Like *Virginia Ry. Co.*, the Court in *Hull by Hull* did not squarely address the question of admissibility of expert testimony on a child's loss of earning capacity.

Other courts, albeit state courts, have more directly addressed the question of whether to admit expert testimony on a child's loss of earning capacity.  One group of cases allows expert testimony on a child's loss of earning capacity if the expert bases that testimony both on statistics and facts specific to the child.  *See, e.g., Bulala v. Boyd*, 239 Va. 218, 233, 389 S.E.2d 670, 677 (1990).  Otherwise, "[e]stimates of damages based entirely upon statistics and assumptions are too remote and speculative…."  *Id.*  For example, an expert should consider facts personal to the child such as academic reports, medical records, the family's educational and vocational background, and impressions from interviews with the child and the child's family.  *See Musick*

4

*v. Dorel Juvenile Group, Inc.*, 818 F.Supp. 2d 960, 963-64 (W.D. Va. 2011). *See also Altman v. Alpha Obstetrics & Gynecology, P.C.*, 255 A.D.2d 276, 278, 679 N.Y.S.2d 642, 644 (1998) (expert considered father's vocation and educational level as well as brother's college attendance and academic achievements); *Thoreson v. Milwaukee & Suburban Transp. Co.*, 56 Wis.2d 231, 240, 201 N.W.2d 745, 750 (1972) (expert must take into account child's handicaps which are supported by medical evidence). In *Andrews v. Reynolds Memorial Hosp., Inc.,* the West Virginia Supreme Court of Appeals allowed expert testimony setting forth three wage loss scenarios, like the ones Johnson proposes, noting that the expert considered the educational background of the child's parents. 201 W.Va. 624, 630-33, 499 S.E.2d 846, 852-55 (1997). On the other hand, the New Jersey Supreme Court held that it,

> will not require expert testimony, as a general rule, to establish the *quantum* of earning-capacity loss for a minor. Again, the subject matter of the proof is not so beyond common experience or the store of knowledge or ordinary people that jurors cannot arrive at a reasonable figure on their own. Moreover, we do not perceive much difference between expert prognostication and jury speculation when the question goes to loss of future earning capacity of a child. There are just too many variables to permit the kind of close calculation that would call for expert testimony. Although we are mindful of the fact that the assessment of an infant's lost income-earning capacity is burdened with the element of speculation, we nevertheless conclude that the question is not so beyond the common knowledge and common experience of jurors as to warrant our making expert testimony mandatory in such cases.

*Lesniak v. Cnty. of Bergen*, 117 N.J. 12, 32-33, 563 A.2d 795, 806 (1989).

As a gatekeeper under Rule 702, the Court is charged with excluding speculative, i.e., unreliable, expert opinion. Although it is tempting to conclude, as the New Jersey Supreme Court did, that any attempt by an expert to determine a child's loss of earning capacity is speculative, the Court agrees with those courts which have held that expert testimony based on statistical averages in conjunction with facts specific to the child is admissible as sufficiently reliable. Such testimony would be helpful to a jury in making its damages findings.

Although Johnson states that he based his wage loss scenarios, in part, on a nurse's life plan, the First Amended Complaint, and Plaintiff's deposition testimony, Johnson concedes that all he knows about A.R. comes from a nurse's life care plan.  Johnson admits that he did not review any medical records to determine what A.R.'s physicians believe are A.R.'s physical and mental limitations or any prognoses for these limitations.  There also is no indication that Johnson relied on the vocational and educational background of A.R.'s family or any of A.R.'s academic records.[2]  Furthermore, there is no indication that Johnson conducted a personal interview with A.R. or her parents to gain any useful impressions.  Under these circumstances, Johnson did not consider sufficient facts specifically related to A.R. to make Johnson's wage loss scenarios reliable.  The Court, therefore, determines that the wage loss scenarios are inadmissible under Rule 702.

IT IS ORDERED that

1.  Defendant Volvo Cars of North America LLC's *Daubert* Motion to Exclude Plaintiff's Expert Witness Robert Johnson's Testimony on Hedonic Damages and Wage Loss Scenarios (Doc. 245) is granted;

2.  Johnson's five-step method for determining hedonic damages is inadmissible and is excluded from trial; and

3.  Johnson's three wage loss scenarios are inadmissible and are excluded from trial.

_____
UNITED STATES DISTRICT JUDGE

_____

[2] The Court notes that at the time Johnson completed his report in May 2014, A.R. was five years old and could have been enrolled in preschool or kindergarten which may have kept academic records on A.R.