IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

    Plaintiff,

v.                                                    Civ. No. 13-00397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS
I-X, inclusive; and JOHN DOES I-X, inclusive,

    Defendants.

MEMORANDUM OPINION AND ORDER

On April 1, 2015, Defendant Volvo Cars of North America, L.L.C. (Defendant VCNA) filed a Motion to Exclude Gerald Rosenbluth and for Summary Judgment as to Plaintiff's Defect and Negligence Claims.[1] (Doc. 248). On April 20, 2015, Plaintiff filed a response. (Doc. 258). On May 7, 2015, Defendant VCNA filed a reply. (Doc. 289). Having reviewed the Motion to Exclude and the Motion for Partial Summary Judgment, the accompanying briefs, and the evidence of record, the Court denies the Motion to Exclude and the Motion for Partial Summary Judgment for the following reasons.

I.    Background

    A. *Notice of Removal (Doc. 1) and Plaintiff's Second Amended Complaint (Doc. 192)*

This federal diversity personal injury lawsuit arises out of child entrapment in a 2001 Volvo S60 four-door sedan automatic power window that occurred in Santa Fe, New Mexico, on September 27, 2010. (Doc. 1-1) at 2. Plaintiff's Second Amended Complaint alleges Defendant

---

[1] The Court construes Defendant VCNA's Motion to Exclude Gerald Rosenbluth and for Summary Judgment as to Plaintiff's Defect and Negligence Claims as two motions; a Motion to Exclude and a Motion for Partial Summary Judgment. The Court will address each motion accordingly.

VCNA is liable in product liability negligence and strict products liability based on the subject window switch's defective manufacturing, design, and Defendant VCNA's failure-to-warn. (Doc. 192) at 2. Plaintiff further contends A.R., Plaintiff's minor child, suffered a severe anoxic brain injury as a result of the entrapment and will require lifelong medical care and assistance with daily living. (Doc. 251) at 3. Plaintiff seeks compensatory and punitive damages. (Doc. 192) at 3.

     *B. Uncontroverted Facts*

On September 27, 2010, Plaintiff drove a 2001 Volvo S60 four-door sedan to Cesar Chavez Elementary School in Santa Fe, New Mexico to pick up his son. (Doc. 244-4) at 3 (Rivera depo. at 45). When Plaintiff arrived at the school, Plaintiff parked the car in a pick-up line. *Id.* The vehicle was running while it was parked. *Id.* (Rivera depo. at 47). Plaintiff and A.R. remained inside the vehicle; Plaintiff was located in the driver's seat and A.R. was in her car seat. *Id.* At some point, Plaintiff removed A.R. from her car seat and placed her on his lap. *Id.* (Rivera depo. at 48–49). While sitting on Plaintiff's lap, A.R. pretended she was driving the vehicle and played with the radio controls, heater controls, and window switches. *Id.* Shortly thereafter, Plaintiff fell asleep with A.R. sitting on his lap. *Id.* (Rivera depo. at 48).

Lizet Dominguez (Dominguez), a passerby, awakened Plaintiff by banging on the windshield of Plaintiff's car. *Id.* (Rivera depo. at 51–52). When Plaintiff awoke he noticed A.R.'s stomach was against the front passenger window with her head positioned outside the window and her neck trapped in the window. *Id.* (Rivera depo. at 52–54). A.R. was unconscious. *Id.* (Rivera depo. at 52). Plaintiff then grabbed A.R. and rolled down the window. *Id.* (Rivera depo. at 56).

Plaintiff cannot recall where A.R.'s feet and hands were located when he discovered her

trapped in the window. *Id.* (Rivera depo. at 54–56). In addition, no one witnessed the front passenger window roll up on A.R.'s neck. (Doc. 244-3) at 11 (Hoffman depo. at 62). Nor did anyone witness A.R. actuate the window switch.[2] (Doc. 244) at 11. Also, there was no physical evidence or markings on the front passenger window or the window switch.[3] *Id.*

### C. Gerald Rosenbluth's Expert Report

Plaintiff intends to introduce the testimony of Gerald Rosenbluth (Rosenbluth) as an automotive product design expert. (Doc. 78) at 3. Plaintiff timely disclosed Rosenbluth and his expert report as required under Fed. R. Civ. P. 26. *See id.* In his expert report, Rosenbluth first summarizes his examinations, testing, and data acquisition of the subject vehicle and an exemplar vehicle. (Doc. 248-1) at 1. Next, Rosenbluth references Exhibit C of his expert report to identify all materials reviewed or relied upon in support of his opinions.[4] *Id.* at 2. Rosenbluth also discusses the facts of the case. *Id.* Rosenbluth then discusses his examination, testing, analysis, and conclusions. *Id.* at 5–11. Finally, Rosenbluth provides his fee schedule, *curriculum vitae* (*CV*), and trial and deposition testimony for the last four years. *Id.* at 11–12; *see also* (Docs. 258-1 and 258-11).

Rosenbluth intends to testify that the subject vehicle's "power right front window system switch" is defectively designed, "which create[s] a potentially unreasonably dangerous condition

---

[2] Defendant VCNA failed to cite with particularity to those portions of the record on which Defendant VCNA relies for the asserted fact that no one witnessed the accident. *See* (Doc. 244) at 11; D.N.M.LR-Civ. 56.1(b). Plaintiff, however, does not dispute this asserted fact. *See* (Doc. 261) at 4–8. Therefore, the fact is deemed undisputed. *See id.*

[3] Defendant VCNA failed to cite with particularity to those portions of the record on which Defendant VCNA relies for the asserted fact that there is no physical evidence or markings on the right front passenger window or window switch. *See* (Doc. 244) at 11; D.N.M.LR-Civ. 56.1(b). Plaintiff, however, does not dispute this asserted fact. *See* (Doc. 261) at 4–8. Therefore, the fact is deemed undisputed. *See id.*

[4] In accord with Fed. R. Civ. P. 26, Rosenbluth attached to his expert report a list of materials he referenced or relied upon in forming his opinions. (Doc. 248-1) at 2. The parties did not submit this attachment to the Court; and Defendant VCNA's Motion to Exclude does not dispute the relevancy or reliability of the materials Rosenbluth reviewed. *See* (Doc. 248).

to the vehicle occupants." (Doc. 248-1) at 9.  Rosenbluth further anticipates testifying that Volvo knew or should have known of the unreasonably dangerous condition in the subject switch "through pre-distribution testing and development and/or evaluation processes including but not necessarily limited to FMEA." *Id.*  Rosenbluth also expects to testify that the subject vehicle's power window system design contains six defective design elements. *Id.* at 9–10.  Finally, Rosenbluth intends to testify that technological and economically feasible alternative designs were available at the time of production of the subject vehicle. *Id.* at 10–11.

II.     *Standard of Review*

    A.  *Expert Testimony*

    Fed. R. Evid. 702 governs the admissibility of expert witness testimony and provides that,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony, which in this case falls on Plaintiff.  *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

    Rule 702 imposes upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony . . . to make certain that an expert, whether basing testimony upon professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir.1995) (describing rule 702 as "liberal standard"); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir.1991) (noting trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

 B. *Summary Judgment*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a

genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

III.   Discussion

   A.  *Defendant VCNA's Motion to Exclude*

Defendant VCNA now moves for the Court to exclude Rosenbluth's testimony in its entirety.  Defendant VCNA contends Rosenbluth should be excluded because:  (1) he is not qualified on matters of adequate test procedures or foreseeability; (2) Rosenbluth's methodology contravenes New Mexico law; and Rosenbluth's opinions are (3) speculative; (4) based on insufficient testing; and (5) improper causation opinions.  The Court determines it has sufficient evidence to evaluate Rosenbluth's testimony without a hearing.  *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003) ("[A] district court has discretion to limit the information upon which it will decide the *Daubert* issue.").

   i.  *Whether Rosenbluth is qualified as an expert to offer his proffered opinions*

Defendant VCNA challenges Rosenbluth's qualifications to render "adequate test procedures" or "foreseeability" opinions pertaining to what VCNA or Volvo Car Company

6

(VCC) designed, developed, and tested.[5] (Doc. 248) at 18. Defendant VCNA claims Rosenbluth is unqualified because he has no experience in pre-production or production testing and development, and he has never worked as a vehicle manufacturer nor has he ever designed a power window system. *Id.*

The Tenth Circuit has held that "[a]s long as an expert stays 'within the reasonable confines of his subject area,' . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Ralston*, 275 F.3d at 970 (alteration in original) (quoting *Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1520 (10th Cir. 1996), *overruled on other grounds by Kumho Tire Co.*, 526 U.S. at 147). Therefore, the question is whether Rosenbluth's testimony regarding adequate testing procedures or foreseeability is "within the reasonable confines" of Rosenbluth's subject area.

Rosenbluth's *CV* demonstrates that he is qualified to offer testimony on automotive engineering, technology, and design. Rosenbluth has worked in the automotive industry for over fifty years. (Doc. 258-1) at 1. Rosenbluth has been in the automotive industry since 1962, working as a mechanic, a manager, automotive instructor, and a corporate representative. (Doc. 258-1) at 1–2. Since 1977, Rosenbluth has worked as an automotive expert consultant working with both plaintiffs and defense attorneys, the Center for Auto Safety, the Technical Advisory Bureau, Inc., and the Arizona Attorney General's Office. *Id.* Rosenbluth also has university-level education in industrial design and technology with a specialization in automotive technology. *Id.* at 1. Rosenbluth has consulted or testified in product liability cases including but not limited to trade practice, industry comparative theoretical function, and static and dynamic testing failure analysis. *Id.* at 1. Finally, between 2010, and 2014, Rosenbluth testified as an automotive expert approximately thirty-five occasions, five of which he provided

---

[5] The Court notes that VCC, Defendant VCNA's parent company, is not a named party to this litigation.

deposition testimony in a federal case. (Doc. 258-11).

When analyzing Rosenbluth's qualifications, the Court is mindful that a proposed expert "may qualify as an expert by knowledge, skill, experience, training, or education" and "should not be required to satisfy an overly narrow test of his own qualifications." *United States v. Gutierrez-Castro*, 805 F. Supp. 2d 1218, 1225 (D.N.M. 2011) (citing *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974)). Thus, taking into account Rosenbluth's training, experience, education, and remembering that whether Rosenbluth "possesses the requisite expertise is a matter altogether separate from the question of whether his proposed testimony satisfies the reliability component of the analysis under *Daubert* and Rule 702," the Court concludes that Rosenbluth has the expertise necessary to opine regarding adequate test procedures or foreseeability with respect to the Failure Mode and Effects Analysis (FMEA). *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1101 (W.D. Okla. 2009), *aff'd*, 405 Fed. Appx. 296 (10th Cir. 2010).

> ii. *Whether Rosenbluth's methodology fails to comply with New Mexico product defect law*

Defendant claims Rosenbluth's opinions and methodology do not comply with New Mexico product liability defect law because (1) he failed to examine whether the subject switch presents an unreasonable risk of injury; (2) he concludes the unreasonable risk is "potential," not that it is unreasonably dangerous; and (3) his analysis is vague, untestable, and inconsistent.

> 1. *Whether Rosenbluth's methodology examines the subject switch for an unreasonable risk of injury*

Defendant VCNA asserts Rosenbluth's methodology improperly deems the window switch is defective because alternative designs and features would minimize, reduce, or eliminate the causal factors in this case. Defendant VCNA maintains the admissible methodology is that a

defect is present because of the product's unreasonable risk of injury.

Under New Mexico law, a product is defective if it presents an "unreasonable risk of injury which a reasonably prudent person having full knowledge of the risk would find unacceptable." UJI 13-1407 NMRA 2005; *see also* UJI 13-1406 NMRA 2009. The trier of fact must look to the risk of harm from the product's "condition or from the manner of its use at the time of the injury." *Id.*

The record demonstrates that Rosenbluth first determined whether an unreasonable risk of injury was present prior to reviewing alternative designs and features. For instance, in his expert report Rosenbluth discusses the subject vehicle's window and switch features and his observations and testing of the subject window and switch. (Doc. 248-1) at 3. Then, Rosenbluth determines that under the facts in this case the subject switch is unreasonably dangerous because of the switch's design to inadvertently actuate. *Id.* at 5. After making this conclusion, Rosenbluth discusses alternative designs that would eliminate the unreasonable risk of injury. *Id.* at 5–6. In addition, at his deposition Rosenbluth testified that he first perceived a defect in the subject switch prior to reviewing alternative designs and functions to eliminate the defect. (Doc. 248-2) at 17 (Rosenbluth depo. at 91–92). Based on the foregoing, the Court finds Rosenbluth's methodology is in accord with New Mexico law and, thus, will not be excluded.

> 2. *Whether Rosenbluth concludes the product presents an unreasonable risk of injury*

Defendant VCNA argues that Rosenbluth improperly concludes that the subject switch "creates a *potentially* unreasonably dangerous condition." (Doc. 248-1) at 9 (emphasis added). In New Mexico, a product is not defective "simply because it is *possible* to be harmed by it." UJI 13-1407 NMRA 2005 (emphasis added).

Rosenbluth's expert report explicitly concludes, "[t]he subject vehicle is defective with

9

respect to the following power right window system switch design operational features which create a *potentially* unreasonably dangerous condition to the vehicle occupants." (Doc. 248-1) at 9 (emphasis added). The expert report further explains, however, that the subject switch presents an unreasonable risk of injury because the "configuration enables inadvertent and unintended powered upward motion" in the manual up mode without an auto reverse feature. *Id.* at 5. Moreover, at his deposition, Rosenbluth unquestionably testified that the switch presented an unreasonably dangerous condition. (Doc. 248-2) at 11 (Rosenbluth depo. at 68). The record, therefore, evidences that Rosenbluth concluded the subject switch is defective because it presents an unreasonably dangerous condition under the facts of this case. *See* UJI 13-1406 NMRA 2009; UJI 13-1407 NMRA 2005. Accordingly, the Court finds Rosenbluth's conclusion admissible and, consequently, denies Defendant VCNA's request to exclude Rosenbluth's testimony for failure to establish an unreasonable risk of injury. *See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citation omitted) (expert opinion must be based on sufficient facts); *see also Bustos v. Hyundai Motor Co.*, 2010-NMCA-090 ¶ 24, 149 N.M. 1, 6–7 (finding expert's opinion product defective "specifically related to his investigation" and, thus, admissible).

       *3. Whether Rosenbluth's analysis is vague, untestable, and inconsistent*

  Defendant VCNA first contends Rosenbluth inappropriately evaluates the switch's condition from a "technical standard" by comparing the subject switch's design with alternative designs. As stated in the preceding section, the Court finds Rosenbluth appropriately extrapolated an unreasonable risk of injury from his examination and testing of the subject switch. Hence, the Court will not exclude Rosenbluth's opinions regarding the subject switch's unreasonably dangerous condition.

  Next, Defendant VCNA states that Rosenbluth's analysis is vague and untestable because

he cannot articulate a particular configuration of window switch elements or features that render a switch defective or non-defective. Moreover, Rosenbluth's methodology is untestable because his review of alternative designs is limited to context of the subject incident. Defendant VCNA maintains that Rosenbluth's methodology should have included a determination as to whether the alternative designs are non-defective under other scenarios.

An expert opinion must be based on facts that enable the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required." *Kieffer*, 90 F.3d at 1499 (citation omitted); *see also Robinson v. Missouri Pac. R.R. Co.*, 16 F.3d 1083, 1089–90 (10th Cir. 1994) (when expert's opinion had some basis in fact, jury could determine whether testimony was helpful).

In this matter, Rosenbluth's expert report explains how the alternative designs and features, applied to the circumstances in this case, would reduce, minimize, or eliminate the unreasonably dangerous condition present in the subject switch. *See* (Doc. 248-1) at 5–9. Rosenbluth is not required to opine with absolute certainty which alternative design would eliminate the defect at issue. Further, Rosenbluth's inability to identify concrete factors or elements goes only to the weight of his opinions, and has no bearing on the admissibility. *See Subaru of Am., Inc.,* 82 F.3d at 1518 (stating that if there is logical basis for expert's opinion, weaknesses in underpinnings of opinion go to weight and not admissibility); *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Furthermore, Defendant VCNA's argument that Rosenbluth's testimony is unreliable because he did not investigate whether the alternative designs are defective in scenarios unrelated to this matter lacks merit. An expert's opinion testimony must

be based on sufficient facts and data of the case at hand, not alternative scenarios in which there is no evidence to support.  *See* Fed. R. Evid. 702.  The Court, therefore, finds Rosenbluth's opinions are not vague or untestable and, accordingly, will not be excluded.

Finally, Defendant VCNA claims Rosenbluth's opinions are inconsistent because he testified that his methodology analyzes the entire window system, but Rosenbluth, in actuality, conducted a "piece-by-piece" analysis.  (Doc. 248) at 12.  Contrary to Defendant VCNA's assertion, a review of the record demonstrates that Rosenbluth's analysis looks at the entire window system and on an element-by-element basis.  For instance, Rosenbluth testified that a window system is not *per se* defective because the switch feature fails the 40-millimeter ball test; the window system could include alternative features that compensate and eliminate any defect an independent feature may possess.  (Doc. 248-2) at 16 (Rosenbluth depo. at 86–89).  Thus, the Court will not exclude Rosenbluth's opinions on the basis of being inconsistent.

    *iii.  Whether Rosenbluth's opinions are speculative and, thus, unreliable*

Defendant VCNA argues that Rosenbluth's opinions regarding (1) alternative designs, (2) feasibility, (3) foreseeability, and (4) industry customs, practices, and knowledge are unsupported and, accordingly, are inadmissible.

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."  *Goebel*, 215 F.3d at 1088.  An expert opinion must be based on facts that enable the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required."  *Kieffer*, 90 F.3d at 1499 (citation omitted); *see also Robinson*, 16 F.3d at 1089–90 (when expert's opinion had some basis in fact, jury could determine whether testimony was helpful).  The Court, generally, should focus on the expert's methodology rather than the expert's conclusions.  *Dodge*, 328 F.3d at 1222.  Nevertheless, more

than "the ipse dixit of the expert" must connect the expert's conclusions to the existing data. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Black's Law Dictionary* 905 (9th ed. 2009) (defining *ipse dixit* as "[s]omething asserted but not proved").

### 1. Rosenbluth's alternative design opinions

Defendant VCNA claims Rosenbluth's opinions that the auto-reverse feature in a 2001 BMW 540i and a 2001 Volkswagen Passat would have reduced, minimized, or eliminated the subject incident is unsupported because he did not test the force exerted by either vehicle.

On June 11, 2015, this Court specifically held that Rosenbluth may not opine on the force applied by the auto-reverse feature in the 2001 Volkswagen Passat. (Doc. 319) at 2. The Court now also finds that Rosenbluth's opinions regarding the 2001 BMW 540i at his deposition were untimely and, accordingly, are excluded. Rosenbluth, nonetheless, may testify about the 2001 Volkswagen Passat's auto-reverse feature in manual mode as an alternative design because he included this opinion in his expert report. (Doc. 248-1) at 6. Any inadequacies in Rosenbluth's analysis of the 2001 Volkswagen Passat auto-reverse feature in manual mode go to the weight of his testimony, not its admissibility. *See United States v. McCluskey*, 954 F. Supp. 2d 1224, 1251 (D.N.M. 2013) (". . . *Daubert* requires that factual determinations and flaws in application of generally reliable methodology are to be handled by cross-examination at trial and presentation of contrary evidence."). Hence, Defendant VCNA may raise during cross-examination or with contradicting evidence any flaws that may exist in Rosenbluth's application of the alternative design.

### 2. Rosenbluth's auto-reverse foreseeability opinions

Defendant VCNA argues Rosenbluth's feasibility opinions regarding the auto-reverse feature in a 2001 BMW 540i, a 2001 Volkswagen Passat, and an exemplar door built by

Rosenbluth's brother are unsupported because his report fails to set forth the basis of his opinions.

The Court finds this issue is denied as moot per the Court's June 11, 2015, Order. (Doc. 319) at 2. Moreover, per the Court's June 11, 2015, Order, Rosenbluth may opine on feasibility of the auto-reverse feature to the extent it is addressed in his expert report. Likewise, as noted earlier, any flaws in Rosenbluth's feasibility analysis go to the weight of his testimony, not its admissibility. *See supra* Part III.A.iii.2 (citing *McCluskey*, 954 F. Supp. 2d at 1251).

### 3. Rosenbluth's design defect foreseeability opinions

Defendant VCNA contends Rosenbluth's foreseeability opinions are inadmissible because he failed to identify an analysis or methodology in support of his opinions. Rosenbluth opines that VCNA or VCC would have foreseen the subject switch's defect if the companies had implemented "adequate test procedures" and design FMEA.

The Court finds the issue regarding FMEA is denied as moot per the Court's June 11, 2015, Order. (Doc. 319) at 2. Additionally, Rosenbluth concluded Defendant VCNA knew or should have known about the defect prior to the subject incident because Defendant VCNA knew of the practicability of administering a 40-millimeter ball test to detect inadvertent switch actuation. *See infra* Part III.A.iv. The Court, in accord with its June 11, 2015, Order, finds that Rosenbluth's opinions regarding foreseeability as to the FMEA and 40-millimeter ball test are admissible to the extent that each foreseeability theory is discussed in his expert report. Any inadequacies in Rosenbluth's foreseeability opinions go to the weight of his testimony, not its admissibility. *See supra* Part III.A.iii.2 (citing *McCluskey*, 954 F. Supp. 2d at 1251).

### 4. Rosenbluth's opinions pertaining to industry customs, practices, and knowledge

Defendant VCNA argues Rosenbluth's expert report fails to state a basis for industry

customs, practices, and knowledge. In particular, Defendant VCNA takes issue with Rosenbluth's "State of the Art" and "State of the Industry" vernacular. Furthermore, Defendant VCNA states Rosenbluth's expert report fails to discuss facts, analysis, or opine on the knowledge of vehicle manufacturers at the time of the production of the subject vehicle. Defendant VCNA also claims the report also lacks any analysis regarding Rosenbluth's seventeen car survey.

As discussed earlier, Rosenbluth's experience and training qualifies him to opine on automotive industry customs, standards, and practices. *See supra* Part III.A.i. Rosenbluth's testimony of the automotive industry customs, standards, and practices, may be helpful to the jury, as the average juror may not be knowledgeable about the practices. *See* Fed. R. Evid. 702. Accordingly, the Court will not exclude Rosenbluth's opinions of automotive industry customs, standards, and practices.

In its June 11, 2015, Order, the Court specifically held that Rosenbluth could testify to "State of the Art" and "State of the Industry" to the extent that the terms are discussed in his report. (Doc. 319) at 2. Rosenbluth's report clearly lists and explains multiple alternative designs in the context of "State of the Art" and "State of the Industry" pre- and post-production of the subject vehicle. (Doc. 248-1) at 7–10. Thus, Rosenbluth's testimony is limited to the foregoing opinions stated in his report. As addressed above, Defendant VCNA may address any flaws in Rosenbluth's "State of the Art" and "State of the Industry" opinions on cross-examination or with contradicting evidence. *See supra* Part III.A.iii.2 (citing *McCluskey*, 954 F. Supp. 2d at 1251).

Finally, the Court finds Defendant VCNA's remaining objections denied as moot per the Court's June 11, 2015, Order. *See* (Doc. 319) at 2–3.

*iv. Whether Rosenbluth's opinions are based on insufficient testing*

Defendant VCNA first alleges Rosenbluth's tests are insufficient because he failed to conduct any testing with a child's actual knee. In this case, this Court previously held that an expert's "failure to test [his/her] hypothesis with an actual child's knee goes towards the weight of [the expert's] opinion, not admissibility." (Doc. 307) at 9 (internal citation omitted). Defendant VCNA's request to exclude Rosenbluth's on this basis is, thus, denied.

Second, Defendant VCNA asserts that Rosenbluth's 40-millimeter ball test is insufficient because (1) the test is inapplicable to vehicles produced prior to October 1, 2008, and (2) Rosenbluth has no opinion as to whether the test replicates a child's knee.

In this matter, it is uncontroverted that as of November 1996, the National Highway Traffic Safety Administration (NHTSA) requested comments regarding mandated switch actuation tests with a 25-millimeter ball representing the size of a child's knee. (Doc. 258-5) at 3. It is also undisputed that on January 17, 1997, VCC and Defendant VCNA submitted a comment suggesting NHTSA require a 50-millimeter ball test. (Doc. 153-2) at 2; (Doc. 258-6) at 6–7. In 2004, the NHTSA's final rule approved a 40-millimeter ball test. (Docs. 258-5 and 258-6). In 2004 or 2005, VCC conducted a 40-millimeter ball test on a S60 model and discovered that the switch could inadvertently actuate the window. (Doc. 258-4) at 4 (Andersson depo. at 81–84). The NHTSA rule became mandatory for all vehicle manufactures for sale in the United States on or after October 1, 2008. (Doc. 258-6) at 1. The NHTSA permitted voluntary compliance prior to that date. *Id.* Additionally, Michelle Hoffman (Hoffman), Plaintiff's biomechanics expert, testified that the 40-millimeter ball test is the industry standard for replicating a child's knee. (Doc. 244-3) at 11 (Hoffman depo. at 64–65). At his deposition, Rosenbluth corroborated Hoffman's testimony. (Doc. 248-2) at 8 (Rosenbluth depo. at 56).

The Court finds that, although Defendant VCNA was not required to comply with the 40-millimeter ball test when the subject vehicle was manufactured, the testimony is admissible under Rule 702. For instance, Rosenbluth as an automotive expert, possess scientific, technical, or specialized knowledge regarding the 40-millimeter test. *See* Fed. R. Evid. 702(a). In addition, Rosenbluth's testimony will assist the trier of fact to determine two facts at issue. *See id.* First, whether A.R.'s injuries were caused by a risk that Defendant VCNA could have reasonably foreseen based on the aforementioned history. *See* UJI 13-1403 NMRA 2013. Second, whether the subject switch's inadvertent actuation created an unreasonable risk of injury under the facts presented at trial. *See* UJI 13-1406 NMRA 2009; UJI 13-1407 NMRA 2005. Next, Rosenbluth's proffered testimony is based on sufficient facts and data from the subject incident and 40-millimeter ball test. *See supra* Part III.A.ii; Fed. R. Evid. 702 (b). Defendant VCNA does not contend that Rosenbluth improperly conducted the 40-millimeter ball test. More importantly, Rosenbluth's testimony is the product of reliable principles and methods because he utilized industry-accepted surrogate testing to determine if a child's knee could actuate the window switch. *See supra*; Fed. R. Evid. 702(c). Finally, Rosenbluth applied his methodology to facts of this case. *See* (Doc. 248-1); *see also supra* Part III.A.ii; Fed. R. Evid. 702 (d). Based on the aforementioned, the Court finds that Rosenbluth's 40-millimeter test is reliable and relevant to the issues before the trier of fact and, thus, admissible. The Court, therefore, denies Defendant VCNA's request to exclude Rosenbluth's opinions on the basis of insufficient testing.

     *v. Whether Rosenbluth's opinions are improper causation opinions*

Defendant VCNA contends that Rosenbluth's opinions are improper causation opinions. In response, Plaintiff concurs that Rosenbluth is not a causation expert and, therefore will not opine on causation. Plaintiff, nonetheless, anticipates that Rosenbluth will reference Hoffman's

biomechanic causation opinions to discuss alternative designs that could eliminate or reduce the risk of inadvertent actuation.

Unlike a lay witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. *See* Fed. R. Evid. 702, 703; *Daubert*, 509 U.S. at 592. In this case, Rosenbluth is proffered as an automotive expert and may testify accordingly. Rosenbluth may not opine on the causation of the subject incident. The Court, however, defers ruling on whether Rosenbluth may reference Hoffman's causation opinion until, and only if, the issue becomes ripe at trial.

> vi. *Conclusion*

The Court concludes that Rosenbluth's opinions and expert report are based on sufficient facts and data. The Court also finds that Rosenbluth employed reliable and credible methodology to the facts of this case. Consequently, Rosenbluth's testimony will assist the jury to determine two facts in issue, defect and foreseeability. Accordingly, Rosenbluth's testimony regarding the subject switch's defect is admissible. Defendant VCNA's Motion to Exclude is denied.

> B. *Defendant VCNA's Motion for Partial Summary Judgment*

Defendant VCNA argues that if the Court denies its Motion to Exclude, Defendant is still entitled to summary judgment because Plaintiff cannot establish his products liability claims by a preponderance of the evidence. (Doc. 248) at 20. Defendant VCNA further contends that the evidence demonstrates the subject vehicle complied with all governmental standards, the subject switch is non-defective according to Defendant VCNA's expert, Dr. Salmon, and there is no evidence of prior entrapment cases involving inadvertent actuation of the subject switch. *Id.*

In this case, viewing Rosenbluth's proffered testimony in the light most favorable to

Plaintiff, a reasonable jury could find that the subject switch's inadvertent actuation was foreseeable and created an unreasonable risk of injury under the circumstances. For this reason, Plaintiff has met his burden in demonstrating a genuine dispute of material fact as to defect. As a result, Defendant VCNA is not entitled to judgment as a matter of law on causation.

    IT IS, THEREFORE, ORDERED that Defendant VCNA's Motion to Exclude Gerald Rosenbluth and for Summary Judgment as to Plaintiff's Defect and Negligence Claims (Doc. 248) is **DENIED**.

    _____
    UNITED STATES DISTRICT JUDGE