IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

        Plaintiff,

v.                                      Civ. No. 13-00397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS
I-X, inclusive; and JOHN DOES I-X, inclusive,

        Defendants.

MEMORANDUM OPINION AND ORDER

On April 1, 2015, Defendant Volvo Cars of North America, L.L.C. (Defendant VCNA) filed a *Daubert* Motion to Exclude Plaintiff's Expert Witness Joseph Callahan, M.D. (Motion to Exclude). (Doc. 241). On April 20, 2015, Plaintiff filed a response. (Doc. 260). On May 7, 2015, Defendant VCNA filed a reply. (Doc. 284). Having reviewed the Motion to Exclude, the accompanying briefs, and the evidence of record, the Court denies the Motion to Exclude for the following reasons.

I.    *Background*

    A.  *Notice of Removal (Doc. 1) and Plaintiff's Second Amended Complaint (Doc. 192)*

This federal diversity personal injury lawsuit arises out of child entrapment in a 2001 Volvo S60 four-door sedan automatic power window that occurred in Santa Fe, New Mexico, on September 27, 2010. (Doc. 1-1) at 2. Plaintiff's Second Amended Complaint alleges Defendant VCNA is liable in product liability negligence and strict products liability based on the subject window switch's defective manufacturing, design, and Defendant VCNA's failure-to-warn. (Doc. 192) at 2. Plaintiff further contends A.R., Plaintiff's minor child, suffered a severe anoxic

brain injury as a result of the entrapment and will require lifelong medical care and assistance with daily living.  (Doc. 251) at 3.  Plaintiff seeks compensatory and punitive damages.  (Doc. 192) at 3.

B.  *Dr. David Joseph Callahan's Expert Report*

Plaintiff intends to introduce the testimony of David Joseph Callahan, M.D. (Dr. Callahan) as A.R.'s pediatric neurology expert.  (Doc. 78) at 1.  Plaintiff timely disclosed Dr. Callahan and his expert report as required under Fed. R. Civ. P. 26.[1]  *See id.*  In his expert report, Dr. Callahan first summarizes the materials he reviewed, including reports from the day of the subject incident and A.R.'s subsequent medical and school records.  (Doc. 260-1) at 1.  Next, Dr. Callahan discusses the facts of the case.  *Id.*  Dr. Callahan then discusses A.R.'s documented injuries, her medical records from 2010 and 2011, and A.R.'s Present Level of Academic Achievement and Functional Performance (IEP) report from September 19, 2013.  *Id.* at 1–2.  Finally, Dr. Callahan states his conclusions.  *Id.* at 2.

Dr. Callahan intends to testify that A.R. suffered a "severe traumatic brain injury" as a result of the entrapment.  *Id.*  In addition, A.R. "has persistent deficits related to [her] brain injury in speech, language, communication, cognition, and coordination."  *Id.*  Dr. Callahan will further opine that although A.R.'s condition may improve, "she has poor prognosis for complete recovery."  *Id.*  Dr. Callahan also anticipates testifying that A.R. remains at risk for post-traumatic seizures and epilepsy.  *Id.*  Lastly, Dr. Callahan will opine that due to her condition it is unlikely that A.R. "will be able to live independently or support herself financially."  *Id*

II.  *Expert Testimony Standard*

---

[1]  On August 18, 2014, Dr. Callahan submitted a supplemental expert report regarding A.R.'s life expectancy.  (Doc. 260-2).  On February 6, 2015, Defendant VCNA filed a Motion to Exclude Dr. Callahan's supplemental report and opinions therein.  (Doc. 184).  On April 29, 2015, this Court excluded Dr. Callahan's supplemental report and opinions pertaining to life expectancy as untimely.  (Doc. 319) at 1 (filed June 11, 2015).

Fed. R. Evid. 702 governs the admissibility of expert witness testimony and provides that,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony, which in this case falls on Plaintiff. *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

Rule 702 imposes upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence

without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150–51.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591. A sufficient factual basis does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed. R. Evid. 703.

The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (describing rule 702 as "liberal standard"); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir.1991) (noting trial court's decision will not be overturned "unless it

4

is manifestly erroneous or an abuse of discretion").

III.    Discussion

Defendant VCNA now moves the Court to exclude Dr. Callahan's testimony in its

entirety.  Defendant contends Dr. Callahan's testimony should be excluded because Dr.

Callahan's methodology is unreliable.[2]  The Court determines it has sufficient evidence to

evaluate Dr. Callahan's testimony without a hearing.  *See Goebel v. Denver & Rio Grande W.*

*R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212,

1228 (10th Cir. 2003) ("[A] district court has discretion to limit the information upon which it

will decide the *Daubert* issue.").

Defendant VCNA first asserts that Dr. Callahan's opinions are unreliable because they

are based solely on a review of A.R.'s out-of-date medical and academic records.  Defendant

VCNA contends that A.R.'s recent records are more trustworthy in determining A.R.'s

prognosis.  Notably, Defendant VCNA does not contend that it was improper for Dr. Callahan to

rely on A.R.'s medical and academic reports.  The gravamen of Defendant VCNA's *Daubert*

challenge is that Dr. Callahan failed to review timely records.

In this matter, Dr. Callahan noted that A.R.'s 2010, medical records evidenced that she

sustained several injuries from the subject incident.  (Doc. 241-1) at 1.  In particular, A.R.'s

October 3, 2010, "MRI showed 'evidence for severe hypoxic ischemic injury affecting the

majority of the supratentorial white matter, with increased signal but no restricted diffusion in

the putamen.'"  *Id.* at 1–2.  At his deposition, Dr. Callahan testified that it is impossible from

A.R. to completely recover because of the severity of her neurological injuries shown in her

MRI.  (Doc. 260-3) at 3 (Dr. Callahan depo. at 86–88).  Dr. Callahan further testified that based

---

[2] Defendant does not challenge Dr. Callahan's qualifications or the relevancy of his proffered testimony.  *See* (Doc. 241).

on A.R.'s injuries, in conjunction with her documented functioning in the 2013, IEP report, that A.R. will never obtain a level of function where she can support herself.  *Id.* (Dr. Callahan depo. at 88).

Based on the foregoing evidence, the Court finds Dr. Callahan had a sufficient basis for his opinions stemming from A.R.'s earlier medical and academic records.  The Court further finds Dr. Callahan's opinions are not mere speculation or conjecture.  Defendant VCNA's challenge to Dr. Callahan's failure to review recent medical and academic records goes to the weight that the jury may afford her testimony and not its admissibility.  *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991) ("[T]he sufficiency of factual basis to support [the expert's] opinion go to its weight, and not its admissibility."); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) ("[T]he weaknesses in the data upon which [the] expert relied go to the weight the jury should [give the expert's] opinion, they do not render [the expert's] testimony too speculative as a matter of law.").  Accordingly, the Court finds Dr. Callahan's opinions meet the *Daubert* reliability standard for admission.

Next, Defendant VCNA argues that Dr. Callahan failed to employ the same level of rigor to A.R.'s case that he applies in his medical practice and, therefore, his opinions are unreliable. In support of its assertion, Defendant VCNA claims Dr. Callahan conducts an independent assessment of his patients' speech ability, language or communication capabilities, coordination capabilities, or cognition capabilities.  Defendant VCNA states Dr. Callahan failed to conduct any independent assessment in this case.

The Court recognizes that the purpose of the *Daubert* inquiry is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Dodge*, 328 F.3d at 1222–23.  Defendant VCNA is

correct that Dr. Callahan testified that, generally, he conducts independent assessments of his patients. (Doc. 260-3) at 4 (Dr. Callahan depo. at 92–94). The record, however, also demonstrates that it is Dr. Callahan's practice to rely on assessments conducted by other professionals. *Id.* (Dr. Callahan depo. at 92). Indeed, Dr. Callahan testified that although he does conduct neurologic examinations, he relies on assessments and reports of other professionals when he completes an assessment pertaining to a person's IQ, cognition, speech, and language. *Id.*

In light of the aforementioned testimony, the Court finds Dr. Callahan employed the same level of rigor in his assessment of A.R. as Dr. Callahan implements in his practice. Accordingly, Dr. Callahan's opinions are reliable. Further, any alleged shortcomings of Dr. Callahan's opinions go to the weight of his testimony, not its admissibility. *See United States v. McCluskey*, 954 F. Supp. 2d 1224, 1251 (D.N.M. 2013) ("... *Daubert* requires that factual determinations and flaws in application of generally reliable methodology are to be handled by cross-examination at trial and presentation of contrary evidence."); *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). During cross-examination, Defendant VCNA may thoroughly question Dr. Callahan regarding any alleged flaws in his assessment of A.R.'s prognosis. Thus, the Court will not exclude Dr. Callahan's proffered testimony.

In conclusion, the Court finds Plaintiff has shown that Dr. Callahan's opinions are the product of reliable data and methodology, and are based on facts which sufficiently satisfy Rule 702's reliability requirements. To the extent Defendant VCNA disputes Dr. Callahan's opinions, those issues are a matter of credibility and weight that may be brought out in cross-examination

or with contrary evidence and resolved by the jury.

IT IS, THEREFORE, ORDERED that Defendant Volvo Cars of North America, L.L.C.'s

*Daubert* Motion to Exclude Plaintiff's Expert Witness Joseph Callahan, M.D. (Doc. 241) is

**DENIED**.

_____
UNITED STATES DISTRICT JUDGE