IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

    Plaintiff,

v.                                        Civ. No. 13-00397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS
I-X, inclusive; and JOHN DOES I-X, inclusive,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Strike the Testimony of Susan E. Biffl, M.D. Under Rule 702 (Motion to Strike), filed April 1, 2015. (Doc. 237). Defendant Volvo Cars of North America, L.L.C. (Defendant VCNA), filed a response on April 20, 2015, and Plaintiff filed a reply on May 7, 2015. (Docs. 267 and 279). Having reviewed the Motion to Strike, the accompanying briefs, and the evidence of record, the Court denies the Motion to Strike.

I.     Background

    *A. Notice of Removal (Doc. 1) and Plaintiff's Second Amended Complaint (Doc. 192)*

This federal diversity personal injury lawsuit arises out of child entrapment in a 2001 Volvo S60 four-door sedan automatic power window that occurred in Santa Fe, New Mexico, on September 27, 2010. (Doc. 1-1) at 2. Plaintiff's Second Amended Complaint alleges Defendant VCNA is liable in product liability negligence and strict products liability based on the subject window switch's defective manufacturing, design, and Defendant VCNA's failure-to-warn. (Doc. 192) at 2. Plaintiff further contends A.R., Plaintiff's minor child, suffered a severe anoxic

brain injury as a result of the entrapment and will require lifelong medical care and assistance with daily living. (Doc. 251) at 3. Plaintiff seeks compensatory and punitive damages. (Doc. 192) at 3.

### B. Dr. Susan Biffl's Expert Report

Defendant VCNA intends to introduce the testimony of Susan E. Biffl, M.D. (Dr. Biffl) to opine on A.R.'s injuries, physical and cognitive condition, past and future medical care, and future prognosis. (Doc. 102) at 1–2. Defendant VCNA timely disclosed Dr. Biffl and her expert report as required under Fed. R. Civ. P. 26. *See id.* In her expert report, Dr. Biffl provides nine opinions about A.R. based on Dr. Biffl's review of A.R.'s medical records, parents' depositions, grandmother's deposition, the police and fire department reports, physical therapy and public school records, Dr. Baker's expert report, and Dr. Biffl's personal examination of A.R. (Doc. 237-1) at 1–2. Dr. Biffl then lists eleven conclusions based upon her clinical experience. *Id.* at 2–3.

Dr. Biffl intends to testify that A.R.'s communication and motor skills should continue to increase. *Id.* at 2. Dr. Biffl further anticipates testifying that A.R. "should become independent with activities of daily living . . . though at a delayed pace." *Id.* Dr. Biffl also expects to testify that potentially A.R. could live independently with supervision support, learn to drive depending on her cognitive process, and obtain some form of employment. *Id.* Finally, Dr. Biffl intends to testify that A.R. will likely have long term deficits in behavioral and cognitive areas; and A.R. "is unlikely to achieve same developmental outcome as she would have prior to her injury." *Id.*

## II. Expert Testimony Standard

Fed. R. Evid. 702 governs the admissibility of expert witness testimony and provides that,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony, which in this case falls on Plaintiff. *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

Rule 702 imposes upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d

1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire*. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150–51.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591. A sufficient factual basis does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed. R. Evid. 703.

The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (describing rule 702 as "liberal standard"); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir.1991) (noting trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

*III.    Discussion*

Plaintiff moves to strike Dr. Biffl's testimony and expert report in its entirety.  Plaintiff contends the Court should strike Dr. Biffl because she is not qualified on matters of pediatric traumatic brain injury (TBI) and her opinions are unreliable.  The Court determines it has sufficient evidence to evaluate Dr. Biffl's testimony without a hearing.  *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003) ("[A] district court has discretion to limit the information upon which it will decide the *Daubert* issue.").

*A.  Whether Dr. Biffl is qualified as an expert to offer her proffered opinions*

Plaintiff challenges Dr. Biffl's qualifications to render opinions pertaining to pediatric TBI.  Plaintiff specifically claims Dr. Biffl is unqualified because she has limited experience in treating patients with similar injuries and age as A.R.

Plaintiff cites to *United States v. Nacchio*, to support his position that the Court should strike Dr. Biffl's testimony because her experience is insufficient and, therefore, will not assist the trier of fact.  555 F.3d 1234, 1258 (10th Cir. 2009).  In *Nacchio*, the Tenth Circuit affirmed the district court's exclusion of an expert on the ground that the proffered testimony was unreliable.  *Id.* at 1257–58.  The issue before the Tenth Circuit was whether an expert, who bases his testimony solely on experience, is reliable under Rule 702.  *Id.* at 1258.  The Tenth Circuit explained that when an expert's opinion arises solely from his own experience, "the [expert] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Id.*

Moreover, in reply, Plaintiff contends *Ralston v. Smith & Nephew Richards, Inc.*, further supports his assertion.  275 F.3d 965 (10th Cir. 2001).  In *Ralston*, the Tenth Circuit affirmed the

5

district court's exclusion of an expert on the ground that she was unqualified. *Id.* at 969. The issue in *Ralston* was limited to whether a board certified orthopaedic surgeon was qualified to opine on a specific subject matter when she testified that she had very little, if any, knowledge on the subject and did not conduct any research. *Id.* at 969–70. The Tenth Circuit held "that merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Id.* at 970.

In this case, the record clearly illustrates that Dr. Biffl's specialized experience, knowledge, and training exceeds that of the proffered experts in *Nacchio* and *Ralston*.[1] At her deposition, Dr. Biffl testified that part of her practice at Children's Hospital Colorado includes pediatric outpatients with brain injuries. (Doc. 267-1) at 2 (Dr. Biffl depo. at 14). Dr. Biffl also stated that while her practice includes mostly children with cancer and amputation rehabilitation, thirty percent of her pediatric patients have traumatic brain injuries. (Doc. 237-2) at 2 (Dr. Biffl depo. at 15–17). In addition, roughly ten percent of Dr. Biffl's patients' TBIs resulted from asphyxiation; and approximately thirty to forty percent of those patients are five-years-old or younger. *Id.* at 3 (Dr. Biff depo. at 18–19). Further, she participates in clinical work at Denver Health where she consults with inpatient adults and children. *Id.* (Dr. Biffl depo. at 14–15). More particularly, Dr. Biffl's pediatric clinical services include rehabilitation for brain injury, including concussions and mild TBI. *Id.* (Dr. Biffl depo. at 15).

Moreover, she testified that her lecture and presentation topics mainly focus on concussions and TBI. *Id.* (Dr. Biffl depo. at 16). Indeed, Dr. Biffl's *curriculum vitae* (*CV*) corroborates her testimony. From 2008 to 2012, Dr. Biffl presented eight different lectures on TBI. (Doc. 267-2) at 2. Four of the lectures pertained to pediatric TBI and concussions. *Id.* Of

---

[1] Notably, Plaintiff does not challenge Dr. Biffl's general training and knowledge in pediatric physical medicine and rehabilitation. *See* (Doc. 279) at 1; *see also* (Doc. 267-2) at 1–2.

the pediatric TBI presentations, at least two addressed acute and long term issues and care. *Id.*

Finally, Dr. Biffl explained at her deposition that her opinions did not rest solely on her experience. Dr. Biffl testified that her opinions are based, in part, on her experience, Dr. Baker's report, and A.R.'s independent mobility. (Doc. 267-1) at 7 (Dr. Biffl depo. at 117–18).

Thus, taking into account Dr. Biffl's specific training, experience, and knowledge, the Court concludes that Dr. Biffl has the expertise necessary to opine on pediatric TBI and A.R.'s prognosis. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1101 (W.D. Okla. 2009), *aff'd*, 405 Fed. Appx. 296 (10th Cir. 2010). Any alleged flaws in Dr. Biffl's analysis of A.R.'s current condition or future prognosis go to the weight of her testimony, not its admissibility. *See United States v. McCluskey*, 954 F. Supp. 2d 1224, 1251 (D.N.M. 2013) (". . . *Daubert* requires that factual determinations and flaws in application of generally reliable methodology are to be handled by cross-examination at trial and presentation of contrary evidence.").

It is noteworthy that Plaintiff also questions Dr. Biffl's "veracity in describing the extent of her knowledge and experience with traumatic brain injuries." (Doc. 279) at 4. Plaintiff's contention relies solely on a contradicting statement Dr. Biffl made at her deposition. At her deposition, Dr. Biffl testified that her last pediatric rehabilitation TBI presentation occurred in South Africa in October 2014. (Doc. 267-1) at 2 (Dr. Biffl depo. at 16). Dr. Biffl described the purpose of the presentation was to educate staff on "short- and long-term needs for traumatic brain injuries . . . and . . . sharing how we tend to take care of children with brain injury here in the Sates." (Doc. 279-1) at 3 (Dr. Biffl depo. at 17). The presentation program, however, states that the title of Dr. Biffl's presentation was "Pediatric [Spinal Cord Injury] Management." (Doc. 279-2) at 4. The Court finds this contradiction insufficient to warrant exclusion of Dr. Biffl's otherwise qualified testimony. *See Ralston*, 275 F.3d at 973 ("Contradictions found in a witness'

testimony are not, in themselves, sufficient to preclude such testimony.").

      B.  *Whether Dr. Biffl's opinions are reliable*

Plaintiff first asserts that Dr. Biffl's opinions are unreliable because her practice does not include significant follow-up on her pediatric patients' development. Plaintiff cites no authority in support of his contention that a physician must follow the progression of specific patients to opine on A.R.'s future prognosis. Nonetheless, the record evidences that Dr. Biffl's experience, training, and knowledge, ranges from pediatric to adult TBIs. *See supra* Part III.A. Dr. Biffl testified that her practice sees a peak of TBI injuries in young children and then in adolescence. (Doc. 237-2) at 2–3 (Dr. Biffl depo. at 17–18). Additionally, as noted earlier, Dr. Biffl's clinical practice includes adult TBI rehabilitation. *Id.* (Dr. Biffl depo. at 14–15). Dr. Biffl's *CV* also shows that she has presented on TBI generally and the long term issues and care of pediatric TBI. (Doc. 267-2) at 2. Thus, the Court finds Dr. Biffl's general and specific experience and knowledge over a broad spectrum of TBI patients is sufficiently reliable for *Daubert* purposes.

Next, Plaintiff contends Dr. Biffl's opinions are unreliable because they are contrary to "widely accepted" and established research and Dr. Denise Taylor's opinions, Plaintiff's expert. (Doc. 237) at 3, 6–7. Plaintiff first cites a National Institute of Health (NIH) article which Plaintiff's counsel presented to Dr. Biffl at her deposition. Plaintiff contends the NIH article "debunks [Dr. Biffl's] baseless opinion that A.R. is unlikely to lose skills over time as she develops and matures." *Id.* at 6. The NIH article, as submitted by Plaintiff, does not state that the research is "widely accepted" or is the standard in traumatic brain injury. Rather, the two-page exhibit only provides an abstract and conclusion. The absence of authority notwithstanding, the NIH article has no bearing on the admissibility of Dr. Biffl's opinions. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991) ("[T]he sufficiency of

factual basis to support [the expert's] opinion go to its weight, and not its admissibility."); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) ("[T]he weaknesses in the data upon which [the] expert relied go to the weight the jury should [give the expert's] opinions, they do not render [the expert's] testimony too speculative as a matter of law.").

Finally, the Court finds no merit in Plaintiff's contention that Dr. Biffl's opinions are unreliable because they are contrary to Dr. Denise Taylor's opinions. In determining reliability of proffered expert testimony, the Court's focus is on the expert's methodology, not on whether the expert's conclusions are correct. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) ("a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions"). Because the Court finds Defendant VCNA has met its burden of showing Dr. Biffl is qualified and her opinions are relevant and reliable, Dr. Biffl may testify at trial. In turn, Plaintiff may address during cross-examination any purported flaws that may exist in Dr. Biffl's application. *See Daubert*, 509 U.S. at 596.

IV.     Conclusion

In sum, the Court finds Dr. Biffl is qualified as an expert based on her general and specific knowledge, skill, experience, training, and education in pediatric TBI. The Court further finds that Dr. Biffl's testimony will assist the jury in determining facts in issue, A.R.'s condition and future prognosis. The Court also finds, based on Dr. Biffl's expert report and testimony, that her opinions are based on sufficient facts and data. Moreover, the Court finds Dr. Biffl employed sufficiently reliable and credible methodology to the facts of this case. Accordingly, Dr. Biffl's testimony is admissible.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion to Strike the Testimony of Susan E. Biffl, M.D. Under Rule 702 (Doc. 237) is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE