# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
Friend of A.R., a minor,

      Plaintiff,

v.                                        CIV 13-0397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
A Delaware Corporation; ROE CORPORATIONS
I-X, inclusive, and JOHN DOES, I-X, inclusive,

      Defendants.

## ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS FOR FAILURE TO PRODUCE RESPONSIVE DOCUMENTS

**THIS MATTER** comes before the Court on Plaintiff's Motion for Sanctions for Failure to Produce Responsive Documents (*Doc. 312*), filed June 3, 2015. Having reviewed the briefs and exhibits submitted by the parties as well as the relevant authorities, the Court finds that Plaintiff's Motion for Sanctions is not well-taken and will be denied.

## I.    Background

Plaintiff asks the Court to sanction Defendant for failing to produce, in response to particular requests for production, the slides for a PowerPoint presentation entitled "Volvo & Child Passenger Safety," which was given by Bruno DiGennaro of Volvo Cars of North America ("VCNA") to the Connecticut Department of Transportation ("DOT") on April 23, 2009 ("the 2009 presentation"). *See Doc. 312*. Specifically, Plaintiff contends that the 2009

presentation was responsive to this Court's April 21, 2014 Order as well as to

Plaintiff's Requests for Production 21 and 23.

The Court's April 21, 2014 Order was entered following an earlier hearing

on Plaintiff's Motion to Compel. At the time of the hearing, the Court took

Plaintiff's Motion to Compel under advisement and ordered counsel to submit a

proposed order outlining the portions of the motion that had been resolved by

agreement. *Doc. 74.* Plaintiff submitted a stipulated proposed order,

acknowledging the parties' agreements as to particular discovery requests, which

the Court signed and entered on April 21, 2014. *Doc. 75.*

As to Plaintiff's Request for Production 1(f), the April 21, 2014 Order

provided that Defendant:

> agreed to search for and produce any communications between
> VCC and the window switch manufacturer directly addressing
> power window entrapment or inadvertent actuation of the window
> switch found in the subject vehicle.  They have also agreed to
> produce any communications on this topic between VCC or VCNA
> and the United States government as well as any VCC or VCNA
> communications to SAE and the MVMA directly addressing power
> window entrapment or inadvertent actuation of the window switch
> found in the subject vehicle.  As to VCC communications on this
> subject with foreign governmental entities, the Court withheld a
> ruling pending receipt of an affidavit by Volvo explaining how this
> information is stored, accessed and searched.  However, the Court
> is informed that the parties subsequently reached an agreement for
> the sake of resolving their discovery dispute on this request
> whereby Defendant has agreed to search for and produce any
> communications by VCNA or VCC to any foreign government
> directly addressing inadvertent actuation or power window
> entrapment from 1995 through the date of the subject accident
> (9/27/2010).

*Doc. 75* at 1-2. As to Request for Production 4, in which Plaintiff sought Volvo

documents discussing the safety risks associated with power windows, the April

21, 2014 Order provided, in pertinent part, that Defendant "agreed to produce documents in its possession which directly discuss power window entrapment or inadvertent actuation of power window switches from 1994-2010." *Doc. 75* at ¶ 4. According to Plaintiff, Defendant produced only two documents pursuant to the parties' agreement and the Court's April 21, 2014 Order memorializing that agreement:  a letter from Defendant to NHTSA dated January 17, 1997, and a test report dated July 9, 2009.

Thereafter, Plaintiff served additional discovery requests on Defendant, including Request for Production 21, which sought "emails, memos, engineering change notices, meeting minutes or other similar communications prepared by Volvo personnel which discuss the risks of accidentally raising a car window, and/or ways to reduce the risks of accidentally raising a car window," and Request for Production 23, which sought "presentations made by or to any Volvo personnel in a managerial capacity which discuss the risks of accidentally raising a car window, and/or ways to reduce the risks of accidentally raising a car window." *Doc. 312*, Ex. D. Notwithstanding objections to these discovery requests, Defendant supplemented its responses on December 12, 2014, stating that "[s]ubject to and without waiving the objections above, VCNA states that it has not located any responsive documents, and VCNA is informed that VCC has not located any responsive documents." *Doc. 312*, Ex. E.

In his motion for sanctions, Plaintiff explains that while preparing responses to dispositive motions, he discovered that Defendant had failed to produce the 2009 presentation in response to Plaintiff's requests for production

and the Court's April 21, 2014 Order. *Doc. 312* at 4. According to Plaintiff, "[t]his presentation . . . discusses the automatic reversal (or 'anti-pinch') system as a way to reduce the risk of injury from a child accidentally raising a vehicle power window." *Doc. 312* at 6. Plaintiff maintains that the 2009 presentation was responsive to his discovery requests and, moreover, that it demonstrates that Defendant had knowledge of the risk posed to children by window entrapment and that it evidences recklessness. *Doc. 312* at 6.

Plaintiff seeks the following sanctions for Defendant's failure to produce the 2009 presentation: (1) reopening discovery for the limited purpose of deposing Bruno DiGennaro and a corporate representative to explain their method of searching for documents and what other documents may have been withheld; (2) compelling VCNA to produce all VCC and/or VCNA PowerPoint presentations from 1994 to 2010 that were presented to any government agency; (3) compelling VCNA to present detailed evidence of the exact methods and individuals used to search documents; (4) compelling VCNA to explain the absence of records and to present "adequate assurances" that no other relevant documents have been withheld; and (5) awarding attorney fees and expenses incurred in preparing this Motion. *Doc. 312* at 7.

Certain of the requested sanctions would impact the jury trial, which is scheduled to commence on August 10, 2015.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 37(b)(2), a court may impose sanctions against a party who "fails to obey an order to provide or permit

discovery," such as an order compelling disclosure. *See* Fed. R. Civ. P. 37(a) & 37(b)(2). Additionally, under Federal Rule of Civil Procedure 37(c), a court may impose sanctions against a party who fails to supplement discovery responses as required by Rule 26(e). Fed. R. Civ. P. 37(c). Determination of the proper sanctions for discovery violations is a "fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

### III.    Analysis

As a preliminary matter, the Court must consider whether the imposition of sanctions is foreclosed by the Federal Rules of Civil Procedure under the circumstances here. Defendant's position is that sanctions are improper, because there was never a Court order or motion to compel addressing Requests for Production 21 or 23. Absent such an order, Defendant insists that a request for sanctions, at least as to those discovery requests, is improper. Defendant maintains that, as a result, sanctions could only be awarded with respect to Requests for Production 1(f) and 4. *Doc. 328* at 6. While Defendant does not dispute that sanctions could be awarded under Rule 37(b)(2) as to Requests for Production 1(f) and 4 for non-compliance with the Court's April 21, 2014 order, it insists that the 2009 presentation is not responsive to those requests. *Doc. 328* at 6

Plaintiff counters, asserting that the Court may award sanctions for Defendant's failure to produce the 2009 presentation, even for those discovery requests not covered in the Court's April 21, 2014 Order. According to Plaintiff,

sanctions may be imposed under Rule 37(c) based upon Defendant's failure to supplement its discovery responses to Requests for Production 21 and 23 as required by Rule 26(e). The Court agrees that Rule 37(c) authorizes the imposition of sanctions based upon a parties' failure to supplement responses to requests for production with responsive documents.  As such, sanctions are not foreclosed as to the referenced discovery requests.

Next, the Court must consider whether the 2009 presentation is responsive to Requests for Production 1(f), 4, 21, or 23. Once again, Defendant agreed to produce, by virtue of the April 21, 2014 Order, communications between VCC and the window switch manufacturer and between VCC or VCNA and the U.S. Government, SAE or MVMA, as well as documents in its possession, that directly address power window entrapment or inadvertent actuation of power window switches.

While the 2009 presentation was within the agreed-upon timeframe, 1995 to September 27, 2010, the Court has little difficulty determining that the document is not responsive to Request for Production 1(f), as the Connecticut DOT is not the switch manufacturer, the U.S. Government, the SAE, the MVMA, or a foreign government. While Plaintiff suggests in its reply brief that the DOT constitutes a "foreign government," the Court is not persuaded. The context provided in the parties' briefs and at the April 7, 2014 hearing on Plaintiff's Motion to Compel, indicated that use of the word "foreign" was intended by the parties to mean governments outside of the United States. *See, e.g.*, *Doc. 63* at 11 (Plaintiff asserting, as to Request for Production 1(f), that VCNA and VCC's

correspondence to foreign governments should not be limited to North America, as a letter to the Australian government, by way of example, would be relevant to injuries from inadvertent actuation in North America); *see also Doc. 72* at 4-5; *Doc. 74* at 1.

A more difficult question is whether the 2009 presentation directly addresses power window entrapment or inadvertent actuation of power window switches[1] for purposes of Request for Production 4. The entire 2009 presentation, which Defendants attached to their response brief, comprises 40 pages of material related to child safety in Volvo-brand vehicles. Only one slide of the 40-slide presentation so much as mentions a power window feature used in Volvo vehicles. The slide at issue references both "anti-pinch reversible windows," which it describes as windows that reverse themselves upon contact, and child window locks for the second row occupants. *Doc. 312* at Ex. F.

Although the "anti-pinch" feature, which was apparently standard on Volvo vehicles in 2009, may have in some circumstances reduced the risk of children becoming entrapped in power windows, the presentation itself contains no discussion of risks associated with inadvertent actuation or power window entrapment by children; nor does it explain why the "anti-pinch" feature was included in Volvo vehicles. The Court cannot agree with Plaintiff that the slide goes so far as to "discuss[] the automatic reversal . . . system as a way to reduce the risk of injury from a child accidentally raising a vehicle power window." While two lines of this single presentation slide may have some tangential relevance to

---

[1] Notably, the language used in the Court's April 21, 2014 Order was language that was negotiated and agreed to by the parties.

the issue of power window entrapment by children, the 2009 presentation simply does not "directly" address power window entrapment or inadvertent actuation of the power window switch. In other words, reasonable people could differ as to the responsiveness of the 2009 presentation to Requests for Production 4 and the Court's April 21, 2014 Order.[2] In short, Defendant's failure to produce this slide or presentation in response to Requests for Production 1(f) and 4 does not rise to the level of sanctionable conduct.

As to Requests for Production 21 and 23, in turn, Defendant insists that Plaintiff improperly seeks sanctions based upon these requests, both because Defendant properly objected to those requests and because Plaintiff did not move to compel responses. The Court is not convinced that Plaintiff is necessarily precluded from seeking sanctions for either reason.

First, while Defendant did object to Requests for Production 21 and 23, it also responded.  Plaintiff argues that Defendant waived its objections by agreeing to search for and produce responsive documents.  *Doc. 363* at 3 (citing *Heller v. City of Dallas*, No. 13cv4000-P, 303 F.R.D. 466, at 39-40 (N.D. Tex. Nov. 12, 2014) and *Sprint Comm'ns Co., L.P. v. Comcast Cable Comm'ns*, LLC, No. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544, at 4-8 (D. Kan. Feb. 11, 2014).

---

[2] Interestingly, although the Court is not convinced that the 2009 presentation was responsive to Plaintiff's requests for production, it appears that it *was* responsive to Defendants' Request for Production 15, in which Defendant sought from Plaintiff copies of "Volvo documents" that were not produced by Defendant that Plaintiff intends to rely upon at trial.  *See Doc. 328* at 1 n.1.  Nevertheless, Plaintiff apparently did not produce the presentation to Defendant until it filed its motion for sanctions.

Defendant, on the other hand, insists that it "took care to describe the specific portions of the request that were objectionable and those that were not, and then responded to the portions that were not objectionable." *Doc. 385* at 4. Defendant objected to Requests for Production 21 and 23 on the basis that they were "overly broad, unduly burdensome, and . . . irrelevant . . . in that [they] lack[] any time frame scope, [were] not limited to the subject switch or vehicle at issue in this case, and [were] not limited to 'risks' that are pertinent to this case." *Doc. 312*, Ex. E. Defendant also objected to Plaintiff's use of the phrase "other similar communications." *Id.* Yet, at the same time, Defendant agreed to produce "responsive documents" generated between 1995 and the date of the subject incident. *Doc. 312*, Ex. E.

In the Court's view, Defendant did not make sufficiently clear that it only searched for responsive documents as to the aspects of Plaintiff's requests to which it had not objected, though it suggests as much in its briefing on the instant motion. *See Doc. 385* at 4-5. In its December 12, 2014, supplemental discovery responses, Defendant indicated that "[s]ubject to and without waiving the objections above, VCNA states that it has not located any responsive documents." *Doc. 312*, Ex. E, at 3. The Court questions whether Defendant's response -- that it searched for responsive documents "[s]ubject to and without waiving [its] objections" -- sufficiently preserved its objections. *See Soseeah v. Sentry Insurance*, 12cv1091 RB/ACT, *Doc. 91* (D.N.M. Nov. 4, 2013) (reasoning that Rule 34 makes no provision for a response "subject to and without waiving its objections" and noting that objecting while also responding leaves a proponent

unsure if information is being withheld); *A.F. v. Espanola Public Schools*, No. 12cv1166 RB/KBM, *Doc. 90*, at 6 (D.N.M. Sept. 24, 2013) (reasoning that Plaintiff waived work product protection by answering the interrogatories).

Moreover, by answering Requests for Production 21 and 23 and purporting not to have any responsive documents, even assuming that it was only required to search for documents that were responsive to unobjectionable aspects of the request, Defendant was still under a continuing duty to supplement its responses with responsive documents discovered at a later time.

Relatedly, a court order compelling discovery is not always a prerequisite to sanctions. Indeed, as Plaintiff points out in his reply brief, the Rules of Civil Procedure explicitly authorize courts to impose sanctions, including most of the sanctions enumerated in Rule 37(b)(2), when a party fails to supplement discovery responses. *See* Rule 37(c)(1). While Defendant insists that Plaintiff's failure to file a motion to compel within twenty-one days, constituted acceptance of Defendant's objections, Local Rule 26.6 specifically excepts those discovery responses, like Defendant's here, which specify that responsive documents will be produced. D.N.M.LR-Civ. 26.6. As such, Plaintiff's failure to file a motion to compel does not preclude a motion for sanctions.

Nevertheless, sanctions are only warranted with respect to Request for Production 21 and 23 if the 2009 presentation was in fact responsive to those requests. And in order to be responsive, the 2009 presentation must discuss the "risks of accidentally raising a car window, and/or ways to reduce the risk of accidentally raising a car window."

In the Court's view, the 2009 presentation does not discuss the risk of accidentally raising a car window, at least not in a direct manner. Instead, the presentation briefly mentions one method of preventing window entrapment, which could be a consequence of raising a window either inadvertently or intentionally. Given that the 2009 presentation was not directly responsive to the discovery requests at issue, Defendant had substantial justification for its nonproduction. As with Requests for Production 1(f) and 4, Defendant's failure to produce the 2009 presentation in response to Requests for Production 21 and 23 does not rise to the level of sanctionable conduct.

Additionally, even if the 2009 presentation was responsive to Plaintiff's discovery requests, minimal, if any, sanctions would be warranted under the circumstances. Among the factors that a court considers imposing sanctions are: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance as to likely sanctions for noncompliance; and (5) the efficacy of lesser sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

The Court finds little prejudice to Plaintiff in Defendant's failure to produce the 2009 presentation. Plaintiff somehow gained access to the presentation apart from the discovery process, though it is not clear how long Plaintiff had the presentation in its possession. Additionally, the probative value of the 2009 presentation is not particularly high. Since the filing of Plaintiff's motion, the Court has granted summary judgment to Defendant on Plaintiff's product liability

negligence claim as well as on Plaintiff's punitive damages claim. As a result, the probative value of the 2009 presentation, which Plaintiff contends demonstrates recklessness by VCNA, is significantly diminished. It is also noteworthy that the 2009 presentation was not made close in time to the manufacture or design of the subject 2001-model-year vehicle; nor is there any indication that the anti-pinch system referenced in the presentation was the same system used in the subject 2001 model year vehicle.

Further, Plaintiff has not articulated precisely how he has been prejudiced, other than to suggest that Defendant's failure to disclose this document is indicative of other discovery failures. Plaintiff contends that VCNA's failure to produce the 2009 presentation in question "raises the question of what other documents VCNA has failed to produce." *Doc. 312* at 6.

But Plaintiff's suggestion that Defendant has withheld other responsive documents amounts to nothing more than speculation. The Court will not extrapolate from Defendant's failure to produce one only-arguably-relevant presentation slide and assume that Defendant unjustifiably failed to produce other documents, especially in the absence of evidence of such discovery abuse. If Plaintiff had concerns as to Defendant's document-searching methods and efforts, he should have gathered evidence regarding these methods and efforts during discovery. For example, Plaintiff could have explored the topics of document retention, document storage, document management, and document searches through discovery requests or by deposing corporate representatives. Defendant's failure to produce the 2009 presentation does not now justify

reopening discovery for these purposes. Simply put, the lack of prejudice to Plaintiff weighs against awarding sanctions against Defendant.

Additionally, given that the 2009 presentation was not clearly responsive to Plaintiff's discovery requests and that it lacks significant probative value, there has been very little interference with the judicial process in Defendant's failure to produce it. On the other hand, if the Court were to grant the requested sanctions against Defendant, reopening discovery at this late date, the parties would lose their August 10, 2015 trial date before the presiding judge.

Finally, there is also no indication of significant culpability by Defendant in failing to produce the 2009 presentation. As discussed herein, reasonable people could differ as to the responsiveness of the 2009 presentation to Plaintiff's requests for production.

IV.   **Conclusion**

Considering the relevant factors and circumstances, the Court concludes that sanctions are not warranted and that Plaintiff's Motion for Sanctions is not well-taken.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion for Sanctions for Failure to Produce Responsive Documents (*Doc. 312*) be, and hereby is, **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE