IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as Parent and
Next Friend of A.R., a Minor,

                    Plaintiff,

vs.                                      Case No. 1:13-cv-397 KG-KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation; ROE CORPORATIONS I-X,
inclusive; and JOHN DOES, I-X, inclusive,

Defendants

## SECOND AMENDED PROPOSED PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16.  The parties conferred and

submit the following Pretrial Order.

## I.  APPEARANCES

Attorneys who will try this action:

| | |
|---|---|
| For Plaintiff(s) | Turner W. Branch |
| | Margaret M. Branch |
| | James B. Ragan |
| For Defendant(s) | Jeffrey M. Croasdell |
| | Todd E. Rinner |
| | Shannon M. Sherrell |
| For other parties | None |

## II.  JURISDICTION AND RELIEF SOUGHT

**A.**    **Subject Matter Jurisdiction.**

    **1.**    **Was this action removed or transferred from another forum? <u>Yes</u>**

    If yes, was the action removed or transferred?

    **<u>X</u>**      Removed        _____  Transferred        _____  Original forum

    **2.**    **Is subject matter jurisdiction of this Court contested?**

    **<u>X</u>**   Uncontested        _____  Contested        _____  Party contesting

    **3.**    **Asserted basis for jurisdiction.**

    _____  Federal Question        **<u>X</u>**    Diversity        _____  Other

    Statutory Provision(s) Invoked:  _____

**B.**    **Personal Jurisdiction and Venue.**

    **1.**    **Is personal jurisdiction contested?**

    **<u>X</u>** Uncontested        _____  Contested

    Identify the party contesting personal jurisdiction and basis for objection:

    _____

    **2.**    **Is venue contested?**

    **<u>X</u>** Uncontested        _____  Contested  _____ Party Contesting

    Identify the party contesting personal jurisdiction and basis for objection:

    _____

**C.**    **Are the proper parties before the Court?**

    **<u>X</u>** Uncontested        _____  Contested

    If contested, identify each missing party or improper party and the basis for contention:

    <u>Plaintiff asserts that Volvo Car Company is missing, but Plaintiffs intend to file a separate</u>

action directly against VCC.

**D.      Identify the affirmative relief sought in this action.**

1.      Plaintiff seeks:

Compensatory damages in excess of $75,000.00, including but not limited to: past and future medical expenses, past and future pain and suffering, mental anguish, loss of earning capacity, loss of enjoyment of life; attorneys' fees; costs; pre-trial interest; and post-trial interest.

2.      Defendant seeks:

Dismissal of Plaintiff's causes of action.  Attorneys' fees and costs.

3.      Other party seeks:

*Not applicable.*

### III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

**A.      Plaintiff's claims:**

1.      The Volvo S60, marketed and sold by Defendant Volvo presented an unreasonable risk of injury by virtue of a power window switch which is susceptible to inadvertent actuation by a child's knee or other body parts.  As the entity placing the car in the stream of commerce in North America, Defendant Volvo is responsible for the design of the vehicle/window ("product") at issue; and the product caused Plaintiff's injuries.

2.      As a result of the conduct of Defendant, Minor Plaintiff, A.R., suffered a severe anoxic brain injury, requiring lifelong medical care and assistance with daily living. It has also caused her a lifelong inability to earn an income to support herself.

**B.      Defendant's defenses:**

1.      Plaintiff, the vehicle operator, and/or a third party was the sole cause of Plaintiff's injuries or contributed to causing Plaintiff's injuries.

2.      Plaintiff and/or third parties bear comparative fault causing for Plaintiff's injuries.

3.      The product is not defective and did not cause Plaintiff's alleged damages.

4.      If any defective condition existed, such defective condition was caused by a third  party or parties.

5.      The methods, standards, and techniques used in designing and manufacturing the product conformed to generally recognized, reasonably available, and reliable state of knowledge in the field at the time the product was designed,  manufactured, and sold, thus, Plaintiff's claims are barred and cannot be proven.

6.      The subject window switch and power window system are consistent with or exceed industry standards and the state-of-the-art regarding 2001MY vehicles.

7.      Plaintiff's injuries and damages were caused by an alleged risk o f the product which was not reasonably foreseeable to VCNA or VCC.

8.      A.R.'s injuries do not require lifelong medical care and assistance with daily living  and have not caused her a lifelong inability to earn an income to support herself.

9.      A.R.'s injuries were incurred when she accidentally hung herself on a partially open window that she opened.

**C.      Claims or defenses of other party:**

*Not applicable*.

## IV.  FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.      Stipulated Factual Contentions.**

The parties agree to the following facts listed separately below:

1.      The product at issue in this case is the right-front power window system (and right-front window switch) in a 2001 Volvo S60 four-door sedan.

2.      On September 27, 2010, A.R. was injured after her neck became entrapped in the right  front power window of the subject vehicle.

3.      As a result of the accident, A.R. suffered anoxic or severe hypoxic ischemic brain injury from which it is unlikely she will ever fully recover.

4.      Plaintiff was parked in a line of cars waiting to pick-up his son at school on the day of the subject incident, with A.R. in her car seat in the rear seat of the subject vehicle.

5.      The vehicle was running at the time of the incident.

6.      Mr. Rivera removed A.R. from her car seat.

7.      Mr. Rivera allowed A.R. to play by operating the window switches and other controls in the vehicle before he fell asleep.

8.      A.R.'s father was asleep at the time A.R. became entrapped in the power window.

9.      Nobody else was in the vehicle, besides A.R. and her father.

10.     At the time Plaintiff fell asleep, A.R. was not in her car seat.

11.     A passerby (Lizet Dominguez) saw A.R. entrapped in the power window and awoke A.R.'s father by banging on the windshield of the car.

12.     A.R. was unconscious and motionless when the passerby saw A.R. entrapped in the window.

13.     Mr. Rivera does not recall whether he had an owner's manual for the subject vehicle.

14.     Nobody witnessed A.R. actuate the window switch with her knee (or any other body part).

15.     Mr. Rivera does not recall if A.R.'s feet were touching anything when he awoke and found A.R. stuck in the window.

16.     There is no evidence as to the actual beginning position of the right-front window when A.R. allegedly pushed down on the switch with her knee and made the window go up.

17.     VCNA is a wholly-owned subsidiary of VCC.

18.     VCC designed and manufactured the subject vehicle.

19.     VCNA imported the vehicle and was responsible for sale of the  vehicle in the United States.

**B.      Contested Material Facts.**

1.      Plaintiff's Contentions:

a.      Volvo Cars of North America, LLC is liable, as the subsidiary of Volvo Car Company with sole responsibility for importing and selling Volvos in  North America for any defect in the design of the subject

vehicle.

b.     The conduct which Plaintiff contends makes the design unreasonably dangerous consists of:
   a.  The use of a power window switch which could be inadvertently activated by a child's knee when pushing down on it.
   b.  The mounting of the switch in a horizontal fashion.
   c.  The failure to include front window lockout.
   d.  The failure to include full functioning ARS.
   e.  Failure to use a raised housing to guard against inadvertent actuation.
   f.  The failure to test the switch in question to see if it was subject to inadvertent actuation.

c.     In 1996 NHTSA, because of a small but persistent problem of children inadvertently pushing down on power window switches (most often with their knees) and raising power windows into their necks causing deaths and serious injuries, notified car makers that they intended to implement a new rule prohibiting the use of switches which would raise the window when pushed down on with a device representing a child's knee.

d.     In 1997, Defendant Volvo vehicles were being made with power window switches that had the fulcrum of the switch on one end. As a result, it was impossible to push down on those switches and raise the power window. The switch had to be pulled up to raise the window, and thus it was not subject to inadvertent actuation.

e.     Also in 1997, Defendant contacted NHTSA in response to its 1996 notice. They agreed that improving the design of power window switches such that they would not raise the window when they were pushed down would provide increased safety to children.

f.     They further recommended to NHTSA a particular device to use in testing switches to see if they might accidentally raise the window.

g.     In spite of the knowledge of this danger, and knowledge of the means to avoid the danger, the 2001 Volvo S60 in which Plaintiff was injured was manufactured and sold with a power window switch that had the fulcrum near the middle of the switch instead of at the end. This meant that if you pushed down on the switch with either the device recommended by Volvo (which had 50mm diameter hemispherical surface), or the device recommended by NHTSA (a similar rounded device but with a 25mm diameter) as simulating a child's knee, it would cause the power window to raise. This presented children with the very danger of inadvertent window entrapment that Volvo was aware of from the 1996 NHTSA notice and from their own reply

to NHTSA in 1997.

h.   In 2004, NHTSA adopted its final rule adopting a spherical device of 40mm diameter and would apply to vehicles beginning in 2008. The S60 Volvo switch would also not pass the test with the 40mm ball device, just as it would not pass with the 25mm diameter device or the 50mm diameter device.

i.   In 2004 or early 2005 Volvo tested the switch with the NHTSA approved device and realized it would not pass the test. A result, they designed a small plastic bezel of minimal cost (more than a penny but less than a dollar) which would pop into the armrest in place of the old switch housing. It had a raised edge which would prevent inadvertent contact by a child from raising the window into her neck.

j.   In spite of realizing in 2004/2005 that the switch posed a danger to children, and in spite of having a simple method to correct the danger, Volvo never made any attempt to convey this information to consumers either through advertising, warnings or other education efforts. Additionally they never notified customers of the replacement part for the cover of the switch to allow them to purchase the part on their own and correct the danger.

k.   In fact, they did absolutely nothing until 2008 when they began using the newly designed bezel because it was required by law. The reason they never made any efforts described in the prior paragraph is because it was not required by law.

l.   This was in direct contrast to Volvo's media representations regarding their safety philosophy, including the representation that car makers should not wait for government regulation to make cars safe. They should do it because it is the right thing to do.

m.   Thus in 2010, with no appreciation of the danger the switch posed to children, Andres Rivera and his daughter went to school to pick up Mr. Rivera's son. While parked in a parking space waiting, Mr. Rivera, unaware of the danger, let his daughter out of her car seat, and she was with him in the front seat playing. Unfortunately, Mr. Rivera dozed off briefly, and was awoken by a woman pounding on the windshield. His daughter had been playing with the window and inadvertently raised the window into her neck asphyxiating her causing severe anoxic brain damage, just as had been foretold by the NHTSA literature and Volvo's comments in the mid 90's.

n.   During the time between the introduction of the S60 and the injury made the basis of this suit, Volvo's market share in the United States was less than 1%. Also, the numbers of serious injuries and deaths from

inadvertent window entrapment (as estimated by NHTSA) was very small - around 1.5 deaths per year and 1 serious injury per year. Based on these numbers, the Volvo switch accounted for about 10% of the serious injuries even though it accounted for less than 1% of the market.

o.    If Volvo had simply tested the switch with its own device prior to manufacture, they could have easily implemented the raised protective bezel in the 2001 S60 and eliminated the danger.

p.    If they had made the protective bezel available to Mr. Rivera and other consumers when they tested the switch, the accident would have been avoided.

q.    If they had used their advertising to warn and educate Mr. Rivera and other consumers so that they, like Volvo, were aware of the dangers to children posed by the switch and inadvertent actuation, Mr. Rivera would have been more cautious and either not let Alana out of her car seat or been more attentive to her.

r.    Additionally, in 2001, there were back up safety devices used by other car makers which Volvo did not use. They include things like proximity vertical mounting of the switch or other mountings to make them less accessible to children's knees, front power window driver lockout switches, or Anti-pinch systems that cause the window to open when they strike an object while closing in both manual and auto raise mode. These designs would also prevent the accident.

s.    Not only did Volvo fail to warn consumers like Mr. Rivera of the dangers posed by the switch, but they affirmatively misrepresented the characteristics of the switch in their literature. Specifically, they represented that the switch would raise the window when it was pulled up, implying that this was the only operation of the switch which would raise the window which was false. Additionally, they affirmatively stated that the window would reverse closing if it encountered an obstruction (such as a child's body part) when in fact it would only reverse when the window was in auto raise mode.

t.    Additionally, before selling the S60, Volvo knew the importance of warning. In Germany, Volvo had to comply with Directive 2000/4/EC of the European parliament. Section 5.8.6 of that directive pertained to the owner's manual or handbook for vehicles and required that the owner's manual contain "clear instructions relating to the power-operated window...including: explanation of possible consequences (entrapment) ... and "a WARNING message indicating the dangers, particularly to children in the case of improper...activation of the power operated window

... systems." Even their own experts in this case admit that they did not

meet that standard in their warnings in the United States owner's manual.

u.   A.R.'s medical bills from the incident are reasonable and necessary.

v.   Michelle Hoffman and Gerald Rosenbluth tested the subject window switch to see if it posed a danger of inadvertent actuation from a child's knee by using the device prescribed by NHTSA (with input from car makers and others) to simulate a child's knee. They determined that the switch would inadvertently actuate and raise the window with that device. It is undisputed that the switch will raise the window when pushed down on with the device prescribed by NHTSA to replicate a child's knee. They did not attempt to actuate the switch by using an actual child's knee (or any other actual body part of a child).

w.   The intent of Volvo in designing the subject switch was that it operate only as a "push-pull" (aka "push-down/pull-up") switch. In spite of that intent, the switch will in fact raise the window if pushed down on with a 40mm ball as set out in FMVSS 118.

2.   Defendant's Contentions:

a.   The design of the subject vehicle did not render the subject vehicle defective.

b.   The manufacture of the subject vehicle did not render the subject vehicle defective.

c.   VCNA provided adequate education regarding the use and dangers of the subject vehicle, as did VCC.

d.   Mr. Rivera knew, or should have known, of the risks of injury in leaving A.R. unattended and unsupervised in the subject vehicle.

e.   Mr. Rivera stated that he hit the switch and closed the window on A.R.

f.   Dina Rodriguez was parked in front of Plaintiff's vehicle.  In her mirror she saw someone walk by and knock on Mr. Rivera's vehicle.  Before then, Ms. Rodriguez had seen (in her passenger-side mirror) A.R. sticking her head out of the window and A.R. was fine during the time that Ms. Rodriguez saw A.R.  Ms. Rodriguez could not tell if the window was all the way down or partially down during the time she saw A.R.

g.   Nobody witnessed the window close on A.R.'s neck.

h.   Nobody witnessed the window move between the time Mr. Rivera fell

asleep and the time he awoke.

i.      Nobody will testify as to the actual position of the window when the passerby saw A.R. trapped in the window.

j.      There is no physical evidence of A.R.'s knee pressing down on the window switch.

k.      There are no physical markings on the switch from the incident.

l.      Mr. Rivera failed to supervise A.R. when the subject incident occurred.

m.     Mr. Rivera did not read the owner's manual.

n.      A.R. was unattended and unsupervised when the subject incident occurred.

o.      If Plaintiff had been awake, he would not have let A.R. remain trapped in the window.

p.      If Plaintiff had been awake, he would have taken action to remove A.R. from the right-front window before she lost consciousness.

q.      Mr. Rivera does not recall ever trying to get a copy of the owner's manual for the subject vehicle.

r.      Mr. Rivera does not recall reading the owner's manual for the subject vehicle.

s.      A.R. was not found with her knee on the subject switch.

t.      There is no evidence as to how long A.R. allegedly actually actuated the subject switch with her knee.

u.      There is no evidence as to how many times A.R. allegedly actually actuated the subject switch with her knee.

v.      There is no evidence as to what force(s) A.R.'s knee allegedly actually applied to the subject switch.

w.      There is no evidence as to what mode of operation the subject window was allegedly actually actuated in.

x.      VCNA distributed the subject vehicle in the United States, but had no role in the design or manufacture of the subject vehicle.

y.      VCC is not a named-defendant in this lawsuit.

z.      VCNA had no role in the design, manufacture, testing, or inspection of the subject vehicle.

aa.     The vehicle complied with all applicable Federal Motor Vehicle Safety Standards.

bb.     The vehicle's power window system had an auto-reverse system that operated when the window was raised in the auto-up mode.

cc.     Neither Michelle Hoffman nor Gerald Rosenbluth tested the subject window switch with an actual child's knee (or any other actual body part of a child) to see if the switch would actuate in the manner alleged by Plaintiff.

dd.     The subject switch was designed to operate as a "push-pull" (aka "push-down/pull-up") switch.

ee.     Until the time of the subject incident, VCNA and VCC had never encountered any incident or complaint or report of an incident involving a window entrapment in any Volvo-brand car.

ff.     The design and operation of the right-front window switch and window was reasonable and appropriate and free from defect because (a) it used a lift-up/push-down switch, (b) it required the key to be in the ignition for the windows to be operable, (c) it had an "anti-pinch" auto-reverse function that operated when the window was placed in the "auto-up" mode of operation; (d) a warning was provided to never leave a child unattended, (e) VCC had no knowledge of any prior incidents of a child becoming trapped in a window in any Volvo-brand car, (f) the subject switch presents an extremely remote risk of inadvertent actuation by a child's knee, and (g) the subject switch is consistent with or exceeds industry standards and customs and the state-of-the-art re 2001MY vehicles.

gg.     There is no evidence of any window entrapment incident involving the inadvertent actuation of a window switch designed to operate as a "push-pull" (aka "push-down/pull-up) switch.

hh.     The subject switch operates as a "push-pull" (aka "push-down/pull-up") switch.

ii.     The subject window switch and power window system were state-of-the-art in 2001 and met or exceeded all applicable industry standards and customs.

        jj.     A.R.'s injuries were incurred when she accidentally hung herself on a partially open window that she opened.

3.     Contentions of Other Party:

     *Not applicable.*

## V.  APPLICABLE LAW

**A.**     **Do the parties agree which law controls the action?**

     <u>X</u> Yes   _____ No

**If yes, identify the applicable law:** <u>substantive law is New Mexico state law; procedural and evidentiary law is federal</u>

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

1.     Plaintiff:     Not applicable.

2.     Defendant:     Not applicable.

3.     Other Party:     Not applicable.

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

The parties have certain motions pending with regard to discovery and certain evidentiary issues (see listing below). At the moment, that is the extent of the foreseeable legal issues, although additional issues may come up either in  trial or as we get closer to trial, but those would probably be limited to evidentiary issues.

## VII.  MOTIONS

**A.**     **Pending Motions (indicate the date filed):**

1.     Plaintiff:

     a.     None at this time.

2.     Defendant: none at this time.

3.     Other Party:     *Not applicable.*

**B.**     **Motions which may be filed:**

    1.     Plaintiff: none.

    2.     Defendant:none.

    3.     Other Party:     *Not applicable.*

Briefing must be complete and filed with the Court in accordance with the scheduling

order.

## VIII.  DISCOVERY

**A.**     **Has discovery been completed?** <u>X</u> Yes      ___ No

    If no, discovery terminates on _____.

**B.**     **Are there any discovery matters of which the Court should be aware?**

    None.

## IX.  ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony.  If the testimony is by deposition, identify the deposition by page number and line number.  A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

    **A.**     **Plaintiff's Witnesses:**

        1.     Plaintiff will call or have available at trial the following witnesses:

Thomas Andersson by Deposition Company representative of Volvo who will testify regarding the history of the switch, Volvo's knowledge of the dangers and other information as discussed  in his deposition.

David J. Callahan in person (expected to testify regarding A.R.'s injuries and prognosis for  recovery and future medical care needs, namely as identified in her report and deposition)

Dawn L. Cook in person (expected to testify regarding A.R.'s injuries and prognosis for recovery and future medical care needs and life care plan, namely as identified in her report)


Anders Eugensson by Deposition Company representative of Volvo who will testify regarding the history of the switch, Volvo's knowledge of the dangers and other information as discussed in his deposition.

Michelle R. Hoffman in person (expected to testify regarding biomechanics and causation explaining how subject incident occurred and address causation as more fully set out in her deposition and report)

Julie Holifield-Sandoval in person LifeSpan employee who has worked with A.R. and can testify regarding her injury, condition and ability. The content of her testimony will be consistent with the records from LifeSpan.

Kathleen Castle in person LifeSpan employee who has worked with A.R. and can testify regarding her injury, condition and ability.
The content of her testimony will be consistent with the records from LifeSpan.

Elizabeth W. LeBron in person LifeSpan employee who has worked with A.R. and can testify regarding her injury, condition and ability. . The content of her testimony will be consistent with the records from LifeSpan.

Neale L. Schwarting in person LifeSpan employee who has worked with A.R. and can testify regarding her injury, condition and ability. . The content of her testimony will be consistent with the records from LifeSpan.

Lizet Dominguez by deposition or in person, unknown at this point (expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Dina Rodriguez – by deposition or in person, unknown at this point (expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Robert Johnson in person (expected to testify regarding economic issues related to A.R.'s injuries as discussed in his report and deposition)

Jackie Morris in person. She is A.R.'s mother and is expected to testify to her injuries, life and recovery.

Andres Rivera in person. He is A.R.'s father and is expected to testify regarding the accident, her injuries, life and recovery.
Gerald Rosenbluth in person (expected to testify regarding the design and functioning of the subject system, its defects and the reasonableness of its design as identified in his

report and deposition)

William Shapiro by deposition. He is an ex-employee of Volvo who can testify regarding Volvo's knowledge of the danger of power window switches to children, Volvo's comments to NHTSA regarding power windows as discussed in his deposition.

Denise E. Taylor in person. She is one of A.R.'s treating doctors and is expected to testify in accordance with her deposition regarding A.R.'s injuries, treatment and recovery.

Alana Rivera. Alana is expected to testify about how she likes school, what she does on a daily basis, and similar things. There is a dispute about her ability to testify, and the parties expect to bring this issue up with the Court for resolution.

David Baker defendant's expert regarding the extent of A.R.'s injuries may testify live or by deposition as discussed in his deposition and report.

      2.     Plaintiff may call the following witnesses:

Kendra Davis in person LifeSpan employee who has worked with A.R. and can testify regarding her injury, condition and ability. The content of her testimony will be consistent with the records from LifeSpan.

Adam Gallegos live or by deposition. Investigating officer who is expected to testify to his findings as discussed in his deposition.

Kim Gallegos by deposition or in person, unknown at this point (expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Raymond Garcia by deposition or in person, unknown at this point (expected to testify regarding his personal knowledge of the subject incident as a first-responder scene witness, namely as covered in his deposition)

Susan Morris in person or deposition. She is the mother of Jackie Morris and may testify regarding her granddaughter's life and condition and other matters touched on in her deposition.

David Rael by deposition or in person, unknown at this point (expected to testify regarding his knowledge of the subject incident and subject vehicle as a police officer assigned to investigate the subject incident, namely as covered in his deposition)

Delfino Rivera in person or deposition. He is the father of Andres Rivera and may testify regarding the history of the vehicle, Andres knowledge of the vehicle, his granddaughter's life and condition and other matters touched on in his deposition.

Kimberly Seymour in person or by deposition. Ms. Seymour was the school nurse who

worked  with A.R. at the scene.  She is expected to testify as set out in her deposition.

Dr. Laurence Shandler in person or by deposition. Dr. Shandler is a treating physician and may  testify regarding his treatment of A.R., injuries and prognosis.

Matthew A. Stelzer was one of A.R.'s treating doctors and may testify in accordance with his  deposition.

Michael Suber by deposition or in person, unknown at this point(expected to testify regarding his  personal knowledge of the subject incident as a first-responder scene witness, namely as covered  in his deposition)

John S. Van Etten live or by deposition. Investigating officer who is expected to testify to his  findings as discussed in his deposition.

Kyle Zuments by deposition or in person, unknown at this point (expected to testify regarding his  knowledge of the subject incident and subject vehicle as a police officer assigned to investigate  the subject incident, namely as covered in his deposition)

**B.      Defendant's Witnesses:**

1.      Defendant will call or have available at trial the following witnesses:  Thomas Andersson and Anders Eugensson will be present beginning August 17th.  David Rael has been subpoenaed for trial on August 18th.  Defendant makes these statements without indicating that any of these three persons will definitely be called.

2.       Defendant may call the following witnesses:

Susan Biffl – in person
          (expected to testify  regarding  A.R.'s injuries and prognosis for  recovery  and future medical care needs, namely as identified in her report and deposition)

David Baker – in person
          (expected to testify regarding A.R.'s cognitive functioning and his testing of A.R.,  namely as identified in his report and deposition)

Janet Toney – in person
          (expected to testify  regarding  A.R.'s injuries and prognosis for  recovery  and future medical care needs and life care plan, namely as identified in her report)

James Funk – in person
          (expected to  testify regarding  the subject incident sequence and the most probable  sequence  of events and causation as to the subject incident and A.R.'s injuries,  namely as identified in his report and deposition)

James Salmon – in person
(expected to testify regarding the design and functioning of the subject vehicle and the lack of defect or negligence by VCNA and/or VCC, namely as identified in his report and deposition)

George Rhodes – in person
(expected to testify regarding A.R.'s alleged future medical damages valuation and value of life/loss of enjoyment of life issues countering the testimony of Robert Johnson, namely as identified in his report)

Thomas Andersson – by deposition or in person, unknown at this point
(expected to testify individually and as a corporate representative concerning topics pertaining to VCC and VCNA and the design and manufacture of the subject vehicle, as covered in Plaintiff's 30b6 deposition notices and as covered as the 30b6 depositions)

Anders Eugensson – by deposition or in person, unknown at this point
(expected to testify individually and as a corporate representative concerning topics pertaining to VCC and VCNA and the design and manufacture of the subject vehicle, as covered in Plaintiff's 30b6 deposition notices and as covered as the 30b6 depositions)

Corporate Representative(s) of VCNA – in person
(expected to possibly testify individually and as a corporate representative concerning topics pertaining to VCNA's connection to the subject vehicle and this lawsuit, such as but not limited to VCNA's role in distributing/selling the subject vehicle, as well as topics unknown to Defendant at this time but which may arise between now and the time of trial or at trial)

Corporate Representative(s) of VCC – in person
(expected to possibly testify individually and as a corporate representative concerning topics pertaining to VCC's connection to the subject vehicle and this lawsuit that are unknown to Defendant at this time but which may arise between now and the time of trial or at trial)

Michelle R. Hoffman – in person
(expected to testify as set forth by Plaintiff above, including her opinions and analysis of how the subject incident occurred and causation)

Gerald Rosenbluth – in person
(expected to testify as set forth by Plaintiff above, including his opinions and analysis as Plaintiff's vehicle design expert)

William Rosenbluth – in person
(expected to testify concerning his work on this case as a retained witness, including his work in designing and constructing Plaintiff's exemplar door and his inspection of the subject vehicle)

Lizet Dominguez – by deposition , unknown at this point
(expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Andres Rivera – in person
(expected to testify as set forth by Plaintiff above, including regarding his personal knowledge of the subject incident, his purchase and sale of the subject vehicle, his usage and maintenance of the subject vehicle, and his involvement in this lawsuit, as well as anything addressed in his deposition)

David Rael – in person, unknown at this point
(expected to testify regarding his knowledge of the subject incident and subject vehicle as a police officer assigned to investigate the subject incident, namely as covered in his deposition)

Kim Gallegos by deposition , unknown at this point (expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Dina Rodriguez – by deposition , unknown at this point
(expected to testify regarding her personal knowledge of the subject incident as a scene witness, namely as covered in her deposition)

Sandra Hanford – by deposition , unknown at this point
(expected to testify regarding her purchase of the subject vehicle from Andres Rivera after the subject incident and her ownership, usage, and maintenance of the subject vehicle during the time she owned it, as well as her sale of the subject vehicle to the Branch Law Firm, namely as covered in her deposition)

Michael Suber – by deposition or in person, unknown at this point
(expected to testify regarding his personal knowledge of the subject incident as a first-responder scene witness, namely as covered in his deposition)

Dr. Michael Stelzer – by deposition , unknown at this point
(expected to testify as to his treatment of A.R., about the medical records he created, and as covered in his deposition)

## X.  TRIAL PREPARATION

**A.     Exhibits.**

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.  The parties must file a "consolidated exhibit list

identifying all exhibits that the parties have stipulated are admissible" and a "consolidated exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there are other objections" no later than 20 calendar days before trial.

For those exhibits on which a stipulation could not be reached, the offering party must file a separate "contested exhibit list" no later than 10 calendar days before trial. Each party's contested exhibit list must be filed on the date identified in the preceding paragraph.     All exhibits must be marked before trial.  Exhibits must be marked numerically and identify the party offering the exhibit.  The identification number or letter will remain the same whether the exhibit is admitted or not.

**B.     Witness Lists.**

Each party's witness list must be filed with the Clerk and served on all parties by 20 calendar days before trial.  Indicate whether the witness is testifying by deposition or in person. Objections to use of deposition testimony are due within fourteen (14) calendar days of service of the witness list.  The objecting party must mark those portions of the requested deposition testimony to which the party objects.  Marking must comply with D.N.M.LR-Civ. 10.6.  The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing at least 5 calendar days before trial.

**C.     Voir Dire.**

    1.     If allowed, do the parties wish to participate in voir dire?

        Plaintiff           X Yes        ____ No

        Defendant         X Yes        ____ No

        Other Party      __Yes        ____ No      *Not applicable.*

    2.     Each party wishing to participate in voir dire must serve on all parties and file

with the Clerk a pleading entitled "Proposed Voir Dire Questions." The pleading must identify the specific areas about which the party wishes to inquire and must set forth proposed voir dire questions. This request must be filed at least <u>7 calendar days prior to jury selection</u>.

**D.     Jury Instructions and Verdict.**

**1.     In General.**  The parties must confer about proposed jury instructions. The Court will prepare and provide the parties with a Court-proposed set of general "stock" instructions that will be given. The stock instructions are available from the Court's web site. The instructions that the parties must submit to the Court will be those which set forth the elements and definitions of the claims or charges, and the elements and any definitions of any defenses.

**2.     Sources for Instructions.**  If pattern instructions are followed by the judge, the judge will indicate at the pretrial conference his or her preference for the source of instruction.

**3.     Submission of Proposed Instructions.**  The parties must submit one mutually approved set of jury instructions no later than <u>20 calendar days before trial</u>. For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

**4.     Form of Instructions.**

a.     Submit sets of double-spaced instructions as follows:

<u>N/A</u> set(s) of originals without citations and headed "Instruction No. ___"; and

<u>4</u> set(s) with citations and numbered accordingly, one of which will be filed.

b.     If requested, also submit all instructions in a format compatible with

MS Word.   Please refer to the procedures, available on our web site, for electronically submitting proposed text.

c.      Submit no more than one instruction to a page.

d.      All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.

e.      Submit a cover sheet on all sets of instructions.

**5.      Deadlines for Submitting Instructions**.

a.      Instructions shall be filed <u>20 calendar days before trial</u>.

b.      Supplemental unanticipated jury instructions may be submitted at trial.

**E.      Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection.  The statement must be submitted to the Court <u>20 calendar days before jury selection</u>.

**F.      Submission for Bench Trials.**

1.      The parties must submit one mutually approved set of proposed findings of fact and conclusions of law no later than <u>N/A</u> calendar days before trial.  For those findings of fact and conclusions of law the parties were unable to agree upon, each party must submit its own proposed findings of fact and conclusions of law at the same time as submission of the mutually approved set.

2.      If requested, submit the findings of fact and conclusions of law in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

# XI. OTHER MATTERS

**A.**     **Settlement Possibilities.**

1.     The possibility of settlement in this case is considered:

X Poor          _____ Fair     _____ Good _____ Excellent     _____ Unknown

2.     Do the parties have a settlement conference set with the assigned Magistrate Judge?

_____ Yes          **X** No          If yes, when? _____

If a settlement conference has already been held, indicate approximate date:

September 16, 2014

Would a follow-up settlement conference be beneficial?  _____ Yes  _____ No  **X** Possibly

3.     Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial? **X** Yes     ____ No

If yes, please identify: Plaintiff believes that Defendant is misevaluating the case, and Defendant believes Plaintiff is misevaluating the case.  Plaintiff believes that, under those circumstances, a brief summary jury trial might be both enlightening and productive. Defendant disagrees.

If no, explain why not: _____

**B.**     **Length of Trial and Trial Setting.**

1.     This action is a          _____ Bench Trial  _X_ Jury Trial     _____ Both

2.     The case is set for trial on August 10, 2015.  If there is no setting, the parties estimate they will be ready for trial by N/A.

3.     The estimated length of trial is 7-10 day(s).

## XII. EXCEPTIONS

Defendant does not agree to a summary jury trial at this time.

## XIII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this 4th day of August, 2015.

By: *approval received via email on August 4, 2015*
James B. Ragan
Law Offices of James B. Ragan
723 Coleman Avenue
Corpus Christi, TX  78401
361-884-9144 (f)
jimragan13@gmail.com

-and-

Turner W. Branch
Margaret Moses Branch
2025 Rio Grande Blvd. NW
Albuquerque, NM  87104
Telephone:  505-243-3500
mtrujillo@branchlawfirm.com
*Attorneys for Plaintiff*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.C.

By: _____
Jeffrey M. Croasdell
Todd E. Rinner
Shannon M. Sherrell

23

201 Third Street, Suite 2200
Albuquerque, NM  87102
Telephone: (505) 765-5900
Facsimile:  (505) 768-7395
E-mail:  jcroasdell@rodey.com
             trinner@rodey.com
             ssherrell@rodey.com
*Attorneys for Volvo Cars of North America, LLC*

Dated:  <u>August 6, 2015</u>.

UNITED STATES DISTRICT JUDGE