IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

    Plaintiff,

v.                                               Civ. No. 13-0397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation,

    Defendant.

MEMORANDUM OPINION AND ORDER

On August 24, 2015, Plaintiff Andres Rivera ("Rivera"), as parent and next friend of A.R., a minor, filed a Motion to Alter the Judgment to Include Prejudgment Interest and Postjudgment Interest. (Doc. 444.) Defendant Volvo Cars of North America, LLC ("Volvo"), filed a response, and Rivera filed a reply. (Docs. 449, 450.) On August 20, 2015, a jury rendered a verdict in favor of Rivera for $9,686,225.15 in total damages, finding Rivera thirty percent at fault. (Doc. 440) at 2. Rivera now moves pursuant to Federal Rule of Civil Procedure 59(e) for prejudgment interest at a rate of ten percent beginning on February 1, 2013, when the Complaint was served, and moves for postjudgment interest in accordance with 28 U.S.C. § 1961. Upon review of the briefing, the record, and the relevant law, the Court denies in part and grants in part the motion.

**PREJUDGMENT INTEREST**

In a diversity case, as here, state law governs whether to award prejudgment interest. *Yousuf v. Cohlmia*, 741 F.3d 31, 46 (10th Cir. 2014); *Dig. Ally, Inc. v. Z3 Tech., LLC*, 754 F.3d 802, 819 (10th Cir. 2014). The applicable New Mexico statute reads as follows:

> Unless the judgment is based on unpaid child support, the court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:
> (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
> (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

NMSA 1978, § 56-8-4(B) (Repl. Pamp. 1996). A court may also examine equitable considerations not listed in the statute if they "further the statute's goals of 'foster[ing] settlement and prevent[ing] delay.'" *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 61, 301 P.3d 387, 403 (alteration in original) (quoting *Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 61, 899 P.2d 576, 593).

Whether to award prejudgment interest is within the discretion of the district court. *Id.* at ¶ 60. The court "is not required to make specific factual findings," though the reasoning for a denial of prejudgment interest must be "ascertainable from the record and not contrary to logic and reason." *Id.* at ¶ 61 (quotation omitted). A court may deny prejudgment interest where difficult legal issues, comparative fault, or disputed damages calculations may present challenges to settlement. *Id.* ¶ 62 (citing *Bird v. State Farm Mut. Auto Ins. Co.*, 165 P.3d 343 (N.M. 2007)).

Rivera claims that he is entitled to the maximum ten percent prejudgment rate under the statute because he did not cause unreasonable delay and because Volvo failed to make any reasonable and timely settlement offers. Rivera asserts that pursuant to the Court's June 19, 2014, Order, he provided a settlement offer to Volvo in anticipation of the September 16, 2014, settlement conference. (Doc. 86.) According to Rivera, Volvo did not respond with a counteroffer, and in fact did not make its first counteroffer until the end of June 2015, almost a year later, even after Rivera lowered his settlement demand after the settlement conference. In response to Volvo's June 2015 counteroffer, Rivera states that he reduced his demand, that

Volvo then increased its offer, and that Rivera subsequently reduced his demand a second time. Yet, Rivera posits that Volvo never made an offer "remotely close" to the jury verdict or one that would even cover the expenses in the case.

Volvo responds that Rivera is not entitled to any prejudgment interest because its offers were reasonable and timely, it did not engage in dilatory practices, and the case involved heavily-contested, difficult issues worthy of a full trial on the merits. Specifically, Volvo contests Rivera's contention that Volvo provided no responsive offer prior to the settlement conference. Volvo states that it "did communicate an amount specific settlement offer to [Rivera's] counsel prior to the settlement conference—an offer that was reflective of the extreme position [Rivera] took with his initial demand . . . that was more than 3 times greater than" amount awarded by the jury in this case. (Doc. 449) at 3. Volvo purportedly stated at the settlement conference that it was willing to extend an offer in the mid-six-figures range, but this amount was millions of dollars less than Rivera's settlement floor. Volvo asserts that counsel continued settlement discussions with Rivera on the telephone and in-person after the settlement conference, but the parties remained too far apart on their settlement expectations. Volvo contends that, on the eve of trial, it informed Rivera that it was willing to "perhaps com[e] close to the seven-figure range." (Doc. 449) at 3. With respect to the merits of the case, Volvo states that the parties disputed liability and the amount of money to cover A.R.'s future services. As to timeliness, Volvo points out that depositions of Rivera's experts continued into November 2014 and argues that Volvo did not cause any delay in the case.

Rivera counters that Volvo never made an offer that would have covered the expenses of litigation, much less the combined litigation expenses and past medical bills. Accordingly, Rivera contends Volvo knew that its offers had no possibility of settling the case. Rivera points

out that Volvo's initial settlement offer was less that 0.4% of the jury verdict and never reached more than six percent, despite Volvo supposedly stating that 2.5 to 3.5 million dollars would settle the case. In contrast, Rivera notes that it offered to settle the case within twenty percent of the jury verdict. Further, Rivera argues that Volvo delayed producing certain discovery served on November 21, 2013, until August 11, 2014; that he learned only after an August 19, 2014, deposition that Volvo had testing of designs with a raised bezel; and that he had to depose another witness because Volvo's company representative who appeared for deposition was not knowledgeable about multiple areas. With regard to the merits of the case, Rivera argues that the case was actually quite simple—"a question of whether or not the jury was going to blame the father more or less than the carmaker." (Doc. 450) at 3. Pursuant to focus group research, Rivera believed that there would be a significant finding of liability against Volvo. Rivera suggested a summary jury trial, but Volvo would not participate. In addition, Rivera argues that Volvo's presentation of the case was based on a weak foundation—from an expert who opined that A.R. was asphyxiated without the window moving to an easily manipulable vehicle survey. Rivera suggests that Volvo did not conduct a good faith analysis of the case. Finally, Rivera contends that Volvo would be unjustly enriched by not having to pay prejudgment interest because Volvo has been receiving a 12.45% return on equity for the relevant period.

     It is not necessary at this juncture for the Court to resolve the factual discrepancies regarding the settlement offers. Most important in the Court's consideration is the parties' dispute over the comparative liability of each of the parties for A.R.'s injuries. While the jury found Rivera to be thirty percent liable and Volvo to be seventy percent liable (Doc. 440) at 2, the percentages could have differed significantly, depending on the jurors' evaluation of Rivera's parental supervisory responsibilities. The New Mexico Supreme Court has specifically noted

that issues of comparative fault add to the complexity of a case and may lead to legitimate delays in settlement. *Sunnyland Farms*, 2013-NMSC-017, ¶ 62. Further, the parties' disagreement about the amount of money necessary to pay for A.R.'s future services also could reasonably be expected to have made settlement more difficult. *See id.* (stating that estimating lost profits was "thorny issue"). While the parties' offers were consistently far apart, there is no indication of bad faith by Volvo. Instead, this case is one in which the parties had different evaluations of liability and damages. This Court also does not find unjust enrichment where Volvo has experienced returns on equity during the pendency of this case. Where legitimate complexities of the case hinder settlement, Section 56-8-4(B)'s purpose of "fostering settlement and preventing delay" is not furthered by awarding prejudgment interest to Rivera. *Id.* Accordingly, the Court finds that Rivera is not entitled to prejudgment interest.

## POSTJUDGMENT INTEREST

The parties agree to the applicability of 28 U.S.C. § 1961 for determining an award of postjudgment interest. Under this provision,

> [i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.

28 U.S.C. § 1961(a) (2012).

In accordance with this statute, the applicable postjudgment interest rate is 0.39% per annum. The Court will, therefore, award Rivera postjudgment interest at a rate of 0.39% per annum.

IT IS ORDERED THAT:

1. Rivera's Motion to Alter the Judgment to Include Prejudgment Interest and Post-Judgment Interest (Doc. 444) is granted in part;

2. Rivera's request for prejudgment interest is denied;

3. Rivera's request for postjudgment interest is granted; and

4. Rivera is awarded a postjudgment interest rate of 0.39% per annum.

_____
UNITED STATES DISTRICT JUDGE