IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRES RIVERA, as parent and next
friend of A.R., a minor,

     Plaintiff,

v.                                                                    Civ. No. 13-00397 KG/KBM

VOLVO CARS OF NORTH AMERICA, LLC,
a Delaware Corporation,

     Defendant.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Renewed Motion for Sanctions

Regarding Hoffman's Undisclosed Literature (Renewed Motion for Sanctions), filed November

4, 2015.  (Doc. 475).  On November 20, 2015, Plaintiff responded and Defendant replied on

December 7, 2015.  (Docs. 476 and 479).  The Court having considered Defendant's motion, the

parties' briefs, the trial transcript, the relevant law, and being otherwise fully informed, finds that

Defendant's Motion should be denied for the reasons set forth below.

I.      *Background*

The Court will present the background information for Defendant's Renewed Motion for

Sanctions by providing summaries of the following:  (1) uncontroverted facts; (2) Plaintiff's

lawsuit; (3) Defendant's Motion to Exclude Opinions and Bases of Plaintiff's Experts that Were

Not Disclosed in Their Expert Reports (Doc. 184); (4) Defendant's Motion to Exclude Michelle

Hoffman and for Summary Judgment as to Causation (Doc. 244); (5) the trial; and (6)

Defendant's Combined Rule 50 and Rule 59 Motion (Doc. 460).

     A.  *Uncontroverted Facts*

On September 27, 2010, Plaintiff drove the subject vehicle, a 2001 Volvo S60, to Cesar Chavez Elementary School in Santa Fe, New Mexico to pick up his son.  (Doc. 244-4) at 3 (Rivera depo. at 45).  When Plaintiff arrived at the school, Plaintiff parked the car in a pick-up line.  *Id.*  The subject vehicle was running while it was parked.  *Id.* (Rivera depo. at 47).  Plaintiff and A.R. remained inside the subject vehicle; Plaintiff was located in the driver's seat and A.R. was in her car seat.  *Id.*  At some point, Plaintiff removed A.R. from her car seat and placed her on his lap.  *Id.* (Rivera depo. at 48–49).  While sitting on Plaintiff's lap, A.R. pretended she was driving the subject vehicle and played with the radio controls, heater controls, and window switches.  *Id.*  Shortly thereafter, Plaintiff fell asleep with A.R. sitting on his lap.  *Id.* (Rivera depo. at 48).

Lizet Dominguez (Dominguez), a passerby, awakened Plaintiff by banging on the windshield of Plaintiff's car.  *Id.* (Rivera depo. at 51–52).  When Plaintiff awoke he noticed A.R.'s stomach was against the front passenger window with her head positioned outside the window and her neck trapped in the window.  *Id.* (Rivera depo. at 52–54).  A.R. was unconscious.  *Id.* (Rivera depo. at 52).  Plaintiff then grabbed A.R. and rolled down the window.  *Id.* (Rivera depo. at 56).

Plaintiff cannot recall where A.R.'s feet and hands were located when he discovered her trapped in the window.  *Id.* (Rivera depo. at 54–56).  In addition, no one witnessed the front passenger window roll up on A.R.'s neck.  (Doc. 244-3) at 11 (Hoffman depo. at 62).  Nor did anyone witness A.R. actuate the window switch.  (Doc. 244) at 11.  Also, there was no physical evidence or markings on the front passenger window or the window switch.  *Id.*

B.  *The Lawsuit*

On April 29, 2013, Defendant removed this diversity personal injury lawsuit to federal

2

court and contemporaneously filed an Answer.  (Doc. 2).  On February 13, 2014, Plaintiff filed a

Motion for Leave to File an Amended Pleading.  (Doc. 56).  On February 9, 2015, the Court

granted Plaintiff's motion.  (Doc. 185).  On February 13, 2015, Plaintiff filed a Second Amended

Complaint, alleging Defendant was liable in product liability negligence and strict products

liability based on the subject window switch's defective manufacturing, design, and Defendant's

failure-to-warn.  (Doc. 192).  Plaintiff further alleged A.R., Plaintiff's minor child, suffered a

severe anoxic brain injury as a result of the entrapment and would require lifelong medical care

and assistance with daily living.  *Id.*  Plaintiff sought compensatory and punitive damages.  *Id.*

On June 10, 2015, the Court granted partial summary judgment in favor of Defendant on

Plaintiff's failure-to-warn claim.  (Doc. 318).  On July 1, 2015, the Court also ruled that

Defendant was entitled to summary judgment on Plaintiff's product liability negligence claim.

(Doc. 332).  On July 2, 2015, the Court also ruled summary judgment was warranted in favor of

Plaintiff as to Defendant's affirmative defense of A.R.'s comparative negligence and

independent intervening cause.  The Court concluded Plaintiff was not entitled to punitive

damages.  (Docs. 358 and 359).

   C.  *Defendant's Motion to Exclude Opinions and Bases of Plaintiff's Experts that Were*
       *Not Disclosed in Their Expert Reports (Motion to Exclude) (Doc. 184)*

On February 6, 2015, Defendant filed a Motion to Exclude Opinions and Bases of

Plaintiff's Experts that were not Disclosed in their Expert Reports (Motion to Exclude).  (Doc.

184).  On February 27, 2015, Plaintiff filed a response and on March 23, 2015, Defendant filed a

reply.  (Docs. 205 and 223).  In its Motion to Exclude, Defendant specifically moved the Court

to exclude twenty-seven literature sources that Michelle Hoffman (Hoffman), Plaintiff's

biomechanical engineering expert on causation, did not disclose to Defendant until her

November 4, 2014, deposition.  The literature sources that Hoffman reviewed for this lawsuit

pertained to power windows and accidental child asphyxia.  (Doc. 244-3) at 2 (Hoffman depo. at

14–17).  Hoffman testified at her deposition that although the twenty-seven articles supported her

"general opinions in the case," her expert report did not cite the sources because they were

"background information."  *Id.* (Hoffman depo. at 16-17).

On April 29, 2015, the Court held a motions hearing.  At the hearing Plaintiff's counsel

unequivocally represented to the Court that Hoffman did not rely on the twenty-seven articles in

forming her opinions or report.  (Doc. 295) at 60–61.  He further stated that Hoffman reviewed

the articles "just as background information to understand this whole window entrapment issue."

*Id.* at 60:6–7.  At the conclusion of the hearing, the Court deferred ruling on Defendant's Motion

to Exclude as to Hoffman until the Court reviewed the parties' *Daubert* briefs (Docs. 244, 261,

and 283), respectively.  *Id.* at 81:16–23.

On May 28, 2015, the Court denied Defendant's Motion to Exclude with respect to

Hoffman's twenty-seven undisclosed literature sources.  (Doc. 306).  The Court found "that any

surprise or prejudice to Defendant is minimal as the untimely disclosed twenty-seven literature

sources do not affect Defendant's ability to litigate or defend Hoffman's causation opinions."  *Id.*

at 7 (applying the four factors articulated by the Tenth Circuit in *Woodworker's Supply, Inc. v.*

*Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).  The Court further found that

Defendant could cure any prejudice by consulting with its experts.  *Id.*  The Court also found that

the final two *Woodworker's* factors—trial disruption and bad faith—weighed in favor of finding

the untimely disclosure substantially justified or harmless.  *Id.*  Consequently, Hoffman's

twenty-seven literature sources were not excluded.  *Id.*

>  D.  *Defendant's Daubert Motion and for Summary Judgment as to Causation (Doc. 244)*

>  On April 1, 2015, Defendant filed a Motion to Exclude Michelle Hoffman and for

Summary Judgment as to Causation.[1]  (Doc. 244).  On April 20, 2015, Plaintiff filed a response;

and on May 7, 2015, Defendant filed a reply.  (Docs. 261 and 283).

In the *Daubert* Motion, Defendant moved the Court to exclude Hoffman's testimony in

its entirety.  Defendant contended that Hoffman's testimony should be excluded because (1)

there was no factual support for the opinion that A.R. actuated the window switch with her knee;

(2) Hoffman's methodology was unreliable; and (3) Hoffman unreliably applied her

methodology to the facts.  The Court determined that Hoffman's opinions were supported by

circumstantial evidence, including but not limited to witness testimony, A.R.'s medical records,

exemplar vehicle measurements, and live and computer-generated surrogate modeling.  (Doc.

307) at 8.  The Court further found that Hoffman's methodology was reliable based on her

observations and deductive reasoning.  *Id.* at 9–10.  Significantly, the Court also concluded that

Defendant's contention —that Hoffman's opinions were unreliable because she failed to review

scientific literature specifically addressing her opinions—lacked merit.  *Id.* at 10.  Rather, the

Court determined Hoffman's proffered testimony was based on reliable and scientifically valid

methodology that fit within the facts of the case.  *Id.*  Moreover, the Court noted that Defendant's

contention went to the weight that the jury might afford Hoffman's testimony, not its

admissibility.  *Id.* at 11.  Finally, with respect to Defendant's third challenge, the Court

concluded that Hoffman's opinions were based on sufficient circumstantial facts and data.  *Id.* at

11–12.  Consequently, the Court denied Defendant's *Daubert* Motion and contemporaneously

denied Defendant's Motion for Partial Summary Judgment as to Causation.  *Id.* at 13.

*E.  The Trial*

This case was tried before a jury beginning on August 10, 2015.  On August 12, 2015,

---

[1]  The Court construed Defendant's Motion to Exclude Michelle Hoffman and for Summary Judgment as to Causation as two motions; a *Daubert* Motion and a Motion for Partial Summary Judgment.  The Court addressed each motion accordingly.

Plaintiff called Hoffman to testify on causation. (Doc. 454) at 146–238. On August 13, 2015, at

the close of Plaintiff's damages evidence, Defendant made two Fed. R. Civ. P. 50(a) motions for

judgment as a matter of law as to Plaintiff's comparative negligence and A.R.'s future loss

wages. (Doc. 455) at 120–27. Then, on August 17, 2015, at the close of Plaintiff's case-in-chief,

Defendant made a Fed. R. Civ. P. 50(a) motion as to Plaintiff's strict product liability claim.

(Doc. 456) at 286–88. The motions were denied and the case was submitted to the jury on

August 19, 2015. (Doc. 458) at 227:13. On August 20, 2015, the jury returned a unanimous

Special Verdict finding (1) the 2001 Volvo S60 was defective; (2) the product defect was the

cause of Plaintiff's injuries and damages; and (3) that Plaintiff Andres Rivera was 30% at fault,

whereas Defendant was 70% at fault. (Doc. 439). The jury awarded Plaintiff $9,686,225.15 in

compensatory damages. *Id.* On August 27, 2015, the Court entered final judgment against the

Defendant in the amount of $6,780,357.61. (Doc. 445).

   *F. Defendant's Combined Rule 50 and Rule 59 Motion (Doc. 460)*

   On September 24, 2015, Defendant filed a Combined Rule 50 and Rule 59 Motion

(Combined Motion). (Doc. 460). On October 6, 2015, Plaintiff responded and Defendant

replied on October 23, 2015. (Docs. 465 and 471).

   In the Combined Motion, Defendant argues, in relevant part, that Hoffman's reliance on

the twenty-seven literature sources was illogical because the sources reported "basic scenario of

inadvertent actuation occurring in other window entrapment cases . . . not one of which identified

the type of switch in any incident." (Doc. 460) at 11. Defendant, moreover, summarily asserts

that Hoffman relied on the sources in forming her opinions despite her testimony that the sources

were for "background knowledge." *Id.* at 11–12.

   Plaintiff, in response, proffers or alludes that Hoffman relied on "the literature" in

forming her opinions.  (Doc. 465) at 15–20.  Plaintiff's brief, however, fails to illuminate the

context of the literature or identify the source beyond Hoffman's own testimony, which is vague

at best.  *Id.*

In reply, Defendant claims Plaintiff misrepresented to the Court the importance of the

twenty-seven literature sources.  (Doc. 471) at 12–14.  Specifically, Defendant contends that

Hoffman—in her deposition and at trial—testified that the twenty-seven sources were not used in

forming opinions because they were for "background knowledge." *Id.* at 13.  Plaintiff's response

brief, nevertheless, inappropriately relies on the twenty-seven sources.  In particular, Defendant

cites the following arguments within Plaintiff's response brief:

- Hoffman reviewed the literature to see if any "incidents were reported as similar to those of" Funk's opinion as part of her analysis (Response at 15);

- Hoffman studied the literature "to see which seems more likely" (Response at 16);

- The literature search was "an appropriate way to compare" the two competing incident theories (Response at 16);

- Hoffman "studied medical literature to see if A.R.'s injuries were consistent with inadvertent actuation" (Response at 16);

- Hoffman's literature search was appropriate because it discussed switches that caused the window to raise in the same manner that the subject switch caused the window to raise (Response at 17);

- Hoffman "studied the literature on injuries to children in power windows and discovered that typically the injuries to children in power windows are minimal" (Response at 17); and

- The location of A.R. was not "toward the front bottom of the window where the literature placed children who were hung outside the car" (Response at 19–20).

(Doc. 471) at 12–13. Based on the foregoing, Defendant claims Plaintiff's misrepresentation

constitutes *inter alia* unfair prejudice and a new trial is warranted.

II.      *Standard of Review*

Expert reports are required under Rule 26(a)(2)(B).  An expert report must contain "a complete statement of all opinions" the expert "will express and the basis and reasons for them," including the facts and/or data the expert considered in forming his/her opinion(s).  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  The purpose of Rule 26(a) is "to identify the expert witness," "set forth the substance of the direct examination," and allow an opposing party "a reasonable opportunity to prepare for effective cross examination . . . ."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (internal citation omitted).

A party must supplement or correct an expert's report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the" opposing party.  Fed. R. Civ. P. 26(e)(1)(A).  The duty to supplement extends to information included in the expert's "report and to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).  When a supplemental report is required, the report may not state additional opinions, rationales, or seek to "strengthen or deepen opinions expressed in the original expert report . . . ."  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (internal citation omitted).  Any supplemental information must be disclosed "at least 30 days before trial" unless the Court orders otherwise.  *See* Fed. R. Civ. P. 26(a)(3) and 26(e)(2).

The penalty for failure to comply with either Rule 26(a) or 26(e) is severe.  Under Rule 37(c)(1), the noncompliant party is not allowed to use the particular information or witness to supply evidence at trial "unless the failure [to disclose] was substantially justified or is harmless."

The Tenth Circuit has identified four factors to determine if a failure to disclose was

substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

III.     *Discussion*

A.   *Timeliness of Defendant's Renewed Motion for Sanctions*

Plaintiff asserts that Defendant's Renewed Motion for Sanctions is untimely because Defendant failed to renew its objection at trial. Plaintiff cites Fed. R. Evid. 103(a) in support of his contention.[2]  Plaintiff's argument ignores, however, Fed. R. Evid. 103(b) which provides in pertinent part, "[o]nce the court rules definitely on the record—either before or at trial—a party need not renew an objection or offer proof to preserve a claim of error for appeal."

Here, prior to trial, Defendant filed a Motion to Exclude Hoffman's twenty-seven undisclosed literature sources. Applying *Woodworker's*, the Court found that the non-disclosure was substantially justified or harmless. As a result, the Court denied Defendant's Motion to Exclude Hoffman's twenty-seven sources and, consequently, the testimony was found admissible. Thus, based upon the Court's definitive pre-trial ruling, Defendant was not required to renew its objection at trial. Defendant's Renewed Motion for Sanctions is, therefore, proper pursuant to Fed. R. Evid. 103(b).

B.   *Defendant's Renewed Motion for Sanctions (Doc. 475)*

1. *Plaintiff's Response Brief Statements*

As an initial matter, Defendant's Renewed Motion for Sanctions (Doc. 475) incorporates

---

[2]  Fed. R. Evid. 103(a) states, in relevant part, "A party may claim error in a ruling to admit . . . evidence only if the error affects a substantial right of the party and . . . a party on the record timely objects . . . ."

its discussion from its Combined Motion, as addressed *supra*. In the Combined Motion,

Defendant maintains that the following arguments within Plaintiff's response brief evidences

Plaintiff's misrepresentations to the Court:

- Hoffman reviewed the literature to see if any "incidents were reported as similar to those of" Funk's opinion as part of her analysis (Response at 15);

- Hoffman studied the literature "to see which seems more likely" (Response at 16);

- The literature search was "an appropriate way to compare" the two competing incident theories (Response at 16);

- Hoffman "studied medical literature to see if A.R.'s injuries were consistent with inadvertent actuation" (Response at 16);

- Hoffman's literature search was appropriate because it discussed switches that caused the window to raise in the same manner that the subject switch caused the window to raise (Response at 17);

- Hoffman "studied the literature on injuries to children in power windows and discovered that typically the injuries to children in power windows are minimal" (Response at 17); and

- The location of A.R. was not "toward the front bottom of the window where the literature placed children who were hung outside the car" (Response at 19–20).

Indeed, a cursory review of Plaintiff's response brief, (Doc. 465), intimates that Hoffman relied

on "the literature" in forming her opinions. Indeed, this is a stark contrast from Mr. Ragan's

April 29, 2015, statement that Hoffman reviewed the literature to merely familiarize herself with

inadvertent window switch actuation. (Doc. 295) at 60–61. A closer review reveals, however,

the following are unsubstantiated statements by Plaintiff:

- Hoffman reviewed the literature to see if any "incidents were reported as similar to those of" Funk's opinion as part of her analysis (Response at 15);

- Hoffman studied the literature "to see which seems more likely"

(Response at 16);

- The literature search was "an appropriate way to compare" the two competing incident theories (Response at 16);

- Hoffman's literature search was appropriate because it discussed switches that caused the window to raise in the same manner that the subject switch caused the window to raise (Response at 17); and

- Hoffman "studied the literature on injuries to children in power windows and discovered that typically the injuries to children in power windows are minimal" (Response at 17).

Plaintiff's unsupported contentions of the purported reasons Hoffman reviewed the literature have no bearing on whether Hoffman actually relied upon the literature in forming her opinions. The Court, accordingly, finds that the aforementioned arguments are irrelevant and, therefore, will not be considered in the Court's analysis. *See* D.N.M.LR-Civ. 7.3(b).

With respect to the fourth contention— "Hoffman 'studied medical literature to see if A.R.'s injuries were consistent with inadvertent actuation'"— the Court finds that Hoffman's trial testimony referenced "medical literature" only in generalities. For example, although Hoffman testified that A.R.'s injuries were "certainly consistent" with the medical literature, she did not unequivocally testify that the medical literature were the bases for her opinions. *See* (Doc. 454) at 174:21–176:4 (general injuries that may present in entrapment cases "consistent" with A.R.'s injuries). In addition, when asked on cross-examination as to whether she relied upon the literature, Hoffman clarified that she did not when she wrote her report. *Id.* at 188:10–189:5. The Court finds no reason to deem her responses incredible. The Court, thus, finds that Hoffman did not rely upon the medical literature to form the bases of her opinion.

In regard to the final statement—"[t]he location of A.R. was not 'toward the front bottom of the window where the literature placed children who were hung outside the car'"—the Court finds Defendant's argument without merit. Plaintiff's response brief cites and relies upon Dr.

11

James Funk's (Dr. Funk) direct testimony, not Hoffman's testimony or opinions.  *See* (Doc. 465)

at 19–20 (citing (Doc. 456) at 261:3–21).  As a result, this Court does not find that Plaintiff

misled the Court.  Thus sanctions are not warranted.  For these reasons, Defendant's Renewed

Motion for Sanctions is denied.

2. *Hoffman's Testimony Regarding Medical and Government Literature*

Next, Defendant summarily claims the following testimony demonstrates that the medical

and government literature served as bases for Hoffman's opinions:

- Reliance on the twenty-seven literature sources, *see* (Doc. 454) at 188:10–15;

- How the incident occurred, *see id.* at 156:4–20, 179:6–18, 180:20–181:3[3], 182:15–22, 232:13–233:25;

- Analysis of A.R.'s injuries, *see id.* at 174:23–175:21, 176:3–4, 191:1–4, 16–22; and

- How National Highway Traffic Safety Administration (NHTSA) literature and the 40-millimeter ball test support her opinions, *see id.* at 190:2–13[4], 222:21–223:25, 228:5–229:9.

The Court finds that several of Defendant's contentions are meritless in light of this

Court's May 28, 2015, Memorandum Opinion and Order (MOO) denying Defendant's Motion to

Exclude Hoffman's testimony pertaining to the twenty-seven sources.  *See* (Doc. 306).  It is also

noteworthy that at no point did Defendant move for conditional limitations on Hoffman's

testimony, nor did the Court mandate any conditions.  Consequently, Hoffman's testimony

regarding the general information within the medical and government literature was permissible.

---

[3]  It is unclear from the record whether Hoffman's cross-examination testimony references the documents she reviewed and cited in her expert report, *see* (Doc. 244-2) at 2 (citing twenty-one documents, not including medical records), or the challenged twenty-seven literature sources.  As such, the Court cannot determine whether the testimony was improper.

[4]  Notably, the Court struck Hoffman's response at 190:9–13 as beyond the scope of the question; and the Court instructed the jury to disregard the response.  (Doc. 454) at 190:14–24.

*See* (Doc. 454)  at 155:18–22, 156:4–20, 174:23–176:4, 190:2–9, 191:1–22, 222:21–223:25, 233:18–25, 228:5–229:9.

Moreover, portions of the contested testimony show that the literature sources were not bases for Hoffman's opinions.  For instance, as addressed *supra*, Hoffman testified on cross-examination that she "relied on a lot of articles," but clarified that the literature established her "background knowledge" and that other than her "general knowledge" she did not rely upon the articles for her opinions.  *Id.* at 188:10–189:5.  A close examination of the record further reveals that part of Hoffman's testimony was in response to hypothetical questions.  *See id.* at 232:13–233:12.  It is well established that an expert may opine based on a hypothetical question. *Kanatser v. Chrysler Corp.*, 199 F.2d 610, 618 (10th Cir. 1952).  Hence, Defendant's Renewed Motion for Sanctions is denied accordingly.

Nonetheless, Defendant's remaining arguments do give pause.  Hoffman's testimony insinuates that she relied upon the literature sources to rebut Dr. Funk's theory that A.R. accidentally hung herself on a stationary window.  *See* (Doc. 454) at 179:6–18, 182:15–22, 233:13–17.  It also is notable that Hoffman's opinion that Dr. Funk's theory is inconsistent with the literature is absent from her expert report.  *See* (Doc. 244-2).  Thus, the question remains whether Plaintiff's failure to disclose Hoffman's opinions was substantially justified or harmless. *Woodworker's Supply*, 170 F.3d at 993.  Assuming *arguendo* the Court's above rulings are in error, the Court's analysis will incorporate all of Defendant's contentions.

### 3. Whether the non-disclosed opinions were substantially justified or harmless

As of November 4, 2014, Plaintiff was on notice that Hoffman's expert report was incomplete.  (Doc. 306) at 3.  Plaintiff, nonetheless, failed to comply with Rule 26(e)(2) and file a supplemental report.  *Id.* at 4.  Moreover, despite extensive briefing and a hearing on the matter

Plaintiff did not supplement the report prior to or after the Court's May 28, 2015, Memorandum

Opinion and Order.  The Court therefore finds that the non-disclosures were not substantially

justified.

The Court, however, does find that the non-disclosures were harmless.  The factors to

consider in determining whether the failure to satisfy Rule 26 was harmless are:  "(1) the

prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the

party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the

trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply*, 170 F.3d at

993.

### i.        Prejudice or Surprise to Defendant

The purpose of expert disclosures is to put the opposing party on notice of the substance

of the testimony that the expert will tender on direct examination.  *Jacobsen*, 287 F.3d at 953.

When the opposing party is unaware of the substance of the expert's direct examination

testimony there is sufficient prejudice.  *Id.*  In other words, exclusion of expert testimony is

warranted if the opposing party is unable to "fully litigate the case and defend against the new

testimony . . . ."  *Rimbert v Eli Lilly & Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011).

In this case, Defendant was aware of the substance of Hoffman's testimony prior to trial.

Hoffman's expert report and deposition go into great detail about her analysis of the medical

records, other records, witnesses' statements, anthropometric data, an exemplar vehicle, and

biometric data.  At no point during litigation did Hoffman amend the substance of her opinion

that the subject switch inadvertently actuated, entrapping A.R.  Moreover, because of this

Court's May 28, 2015, Memorandum Opinion and Order, Defendant was aware that Hoffman's

testimony could encompass the twenty-seven literature sources.  The Court also finds that

Hoffman's reliance on the literature sources was minimal.  As discussed in great detail above,

Hoffman addressed the literature in generalities.  *See supra* Section III.B.2.  And, although

Hoffman testified that A.R.'s injuries were consistent with the literature, at no point did the

substance of Hoffman's opinions rely solely on the literature.

Furthermore, there is limited prejudice with respect to Hoffman's opinion that Dr. Funk's

theory is inconsistent with the literature.  As common and legal sense would dictate—opposing

experts will present opposing theories.  Approximately nine months before trial, Defendant knew

the substance of Hoffman's opinions based on her expert report and deposition.  Defendant also

had access to the twenty-seven literature sources.  At any time prior to trial, Defendant and its

experts could have reviewed the literature to determine how the literature did or did not support

Hoffman's opinions or contradicted Dr. Funk's opinions.  Indeed, Defendant's *Daubert* Motion

and its cross-examination of Hoffman intimates that Defendant reviewed the literature and/or

conferred with its experts.  *See* (Docs. 244, 283, and 454).  Therefore, this factor weighs in favor

of finding the non-disclosures harmless.

> ii.     *Ability of Defendant to Cure the Prejudice*

This factor weighs in favor of granting Defendant's Renewed Motion for Sanctions as the

trial concluded on August 20, 2015.  It is noteworthy, however, that during cross-examination

Defendant extensively asked Hoffman about the literature.  *See* (Doc. 454) at 188:10–191:22.

> iii.    *The Extent to Which Introducing the Opinion Testimony Will Disrupt*
> *Trial*

This factor also weighs in favor of granting Defendant's Renewed Motion for Sanctions

because the trial has concluded.  Nonetheless, the Court notes that Hoffman's discussion of the

literature was limited as her main testimony detailed her biometric analysis.

> iv.     *Plaintiff's Bad Faith or Willfulness*

Plaintiff claims he acted in accord with the Court's prior rulings and, thus, did not act in bad faith. Defendant counters that Plaintiff's bad faith is evident from counsel's misrepresentations to the Court that Hoffman did not rely on the literature as bases of her opinions.

Throughout her deposition and trial testimony, Hoffman maintained that the literature pertained to her "background knowledge" and that she did not rely upon the literature in forming her opinions. Based on her representations, the Court is not willing to find that Plaintiff acted in bad faith. Accordingly, the fourth factor weighs in favor of Plaintiff.

It therefore appears that two of the factors—prejudice and bad faith—weigh in favor of denying Defendant's Renewed Motion for Sanctions. In particular, the Court finds it significant that the minimal prejudice did not impede Defendant's ability to fully litigate and prepare for Hoffman's testimony. Conversely, the Court finds the two factors weighing in favor of Defendant are nominal at best. Defendant, during the deposition and at trial, had an opportunity to cross-examine Hoffman about the literature. More importantly, Hoffman's testimony regarding the literature was minor in comparison to the entirety of her testimony. The Court, thus, denies Defendant's Renewed Motion for Sanctions.

IT IS, THEREFORE, ORDERED that Defendant's Renewed Motion for Sanctions Regarding Hoffman's Undisclosed Literature (Doc. 475), is DENIED.

_____
UNITED STATES DISTRICT JUDGE

16